26 N.J. Super. 68 (1953)
97 A.2d 167
CHARLES SCHEIREK, PLAINTIFF-APPELLANT,
v.
FABIAN IZSA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1953.
Decided May 29, 1953.
*69 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. J. Mortimer Rubenstein argued the cause for appellant (Messrs. Rubenstein & Kosoff, attorneys).
Mr. Louis Santorf argued the cause for respondent (Mr. J. Chester Massinger, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
The plaintiff, an elderly man of 73 years of age, had for a period of 14 years occupied as a tenant a modest apartment on the second floor of No. 73 Dayton Avenue, Passaic, New Jersey. There was only one stairway *70 available for the common use of the tenants of the apartments situate on the second floor. The stairs had been constructed of wood, and throughout at least a score of years the surface of the treads and their projecting edges had been subjected to the progressive degenerations of constant use.
At about 2:30 o'clock in the afternoon of December 8, 1951 the plaintiff while endeavoring to ascend the stairway placed his right foot on the second step from the bottom of the stairs; his foot slipped, it is said, off the nose of the tread, causing him to fall and sustain a fracture of the patella of his right knee, a bodily injury for which he sought compensatory damages in this action.
It was acknowledged at the pretrial conference that the plaintiff was a tenant of the premises, that the stairway was intended for the use in common of the tenants, and that its maintenance and control were retained by the defendant as one of the landlords.
At the conclusion of the introduction of the testimony on behalf of the plaintiff, a motion for a judgment of involuntary dismissal of the action was granted. The propriety of that judgment is the subject of the present appeal. Our review necessitates a comprehensive examination of the evidence embodied in the record in the light of the applicable principles of law, many of which are concisely stated in our opinion in Gentile v. Pub. Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951).
Certain it is that in the consideration of such a motion for an involuntary dismissal the court must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all inferences which may logically and legitimately be drawn therefrom in his favor. Such continues to be the guiding rule. Scarano v. Lindale, 121 N.J.L. 549 (E. & A. 1939); McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229, 243 (1950); Mellon v. Pennsylvania-Reading Seashore Lines, 7 N.J. 415 (1951).
Fundamentally we think of the defendant's legal obligation. It was his duty in the acknowledged circumstances *71 to exercise reasonable care to have the stairway reasonably suitable and safe for its intended use. Daniels v. Brunton, 7 N.J. 102 (1951).
There was evidence in the present case that the treads of the steps of the stairway had progressively and conspicuously deteriorated from constant wear during the several years preceding the occurrence of the mishap. The witnesses described them as "thin," "worn," and "slippery." The edges of the treads had become "thin," "sharp," and "slippery." Counsel for the plaintiff represents to us that the witnesses by their descriptive adjectives and their demonstrative indications sought to disclose that through wear the treads slanted downward in their forward projection to a thin and slippery edge. We think that the testimony implies that import. Whether the worn and deteriorated condition of the tread of the second step was such as to imperil or jeopardize the safety of a lawful user of the stairway and whether its degenerated condition was the proximate cause of the plaintiff's fall and consequent injury were, we think, factual matters appropriately to be determined by the jury in resolving the alleged negligence of the defendant. There was adequate proof of the knowledge of the defendant and of his agent of the condition of the stairs during a period of about five years prior to the accident.
It is our conviction that the alleged dereliction of the defendant in failing to exercise reasonable care to maintain the common stairway under his control in a reasonably suitable and safe condition was in view of the evidence relating to that element of the cause of action a subject for the determination of the jury.
Seemingly the trial judge was of a like persuasion for in granting the requested dismissal he stated, "twelve reasonable men could come to no other conclusion but that he (the plaintiff) assumed the risk in using the stairway at the time of the accident."
To justify a dismissal upon such a motion on the ground of the contributory negligence of the plaintiff or of his voluntary assumption of the known risk, the contributory *72 negligence or the requisite elements of the assumption of the risk must clearly appear conclusively as a fact or by necessary exclusive inference from the proof. Spence v. Maier, 137 N.J.L. 284 (Sup. Ct. 1948), affirmed 1 N.J. 36 (1948); Bacak v. Hogya, 4 N.J. 417 (1950).
And so, the existence either of contributory negligence or of its twin, assumption of risk, is customarily a preeminent question of fact for the jury. Hickman v. Dutch Treat Restaurant, Inc., 3 N.J. 460, 464 (1950); Albanese, Adm. v. Central R.R. Co., 70 N.J.L. 241 (E. & A. 1904); Toohey v. Webster, 97 N.J.L. 545 (E. & A. 1922); Picariello v. Linares & Rescigno Bank, 127 N.J.L. 63 (Sup. Ct. 1941), affirmed ibid. 565 (E. & A. 1941).
Trial judges must be ever mindful that the hypothetical reasonably prudent and cautious man is the one envisioned by the jury. Here the court concluded that there were no materially divergent or conflicting inferences logically to be drawn from the uncontroverted facts relating to the knowledge of the plaintiff of the existing condition of the stairway and of his voluntary use of it, and thus fair-minded jurors, or at least ten of them, could not reasonably differ in resolving that an ordinarily prudent person would not under the same or similar circumstances have incurred, as did the plaintiff, the risk of attempting to ascend the stairs.
That deduction too extravagantly discounted the significant circumstance that the defendant had not provided any other passageway for his tenants necessarily going to and from the second floor. It is a circumstance which might well mitigate and perhaps extinguish in the minds of the jury the alleged voluntary character of the plaintiff's conduct. The notability of its materiality in cases of this nature has received expression in Rush v. Commercial Realty Co., 7 N.J. Misc. 337 (Sup. Ct. 1929); Bailey v. Fortugno, 8 N.J. Misc. 739 (Sup. Ct. 1930); Herman v. Home Owners' Loan Corp., 120 N.J.L. 437 (Sup. Ct. 1938), affirmed 122 N.J.L. 94 (E. & A. 1939); DiGeso v. Franklin Washington Trust Co., 122 N.J.L. 152 (Sup. Ct. 1939); Cammon v. Altavilla, 21 N.J. Super. 240 (App. Div. 1952).
*73 It was stated in DiGeso v. Franklin Washington Trust Co., supra:
"* * * A continued use of defective premises is some evidence of the assumption of the ordinary risk incident to the use thereof. But the question where the invitee of the tenant has no other means of egrees other than by the use of faulty steps, long out of repair, is a question for the jury and not for the court. The landlord being under a duty to repair the stairway in question and the injured woman by reason of her employment being required to use the stairway, it can hardly be said, as a matter of law, that she voluntarily assumed the risk of such use."
The following quotation taken from the decision in Bailey v. Fortugno, supra, is pertinent:
"* * * To hold that a landlord can leave a stairway in such a defective condition as to be dangerous to parties lawfully using it as tenants, for the purpose of going to and from the toilet, and escape liability for injuries resulting from such neglect, so far as tenants who have knowledge of his default are concerned, would practically be to prohibit such tenants from using the toilet during the night hours when the hallway and stairs were unlighted."
The present case is factually distinguishable from many others in that the plaintiff could not in the exercise of due care have avoided the hazardous condition of the stairway by the use of other means to return to his apartment.
Where in these cases a dangerously defective condition has existed to the knowledge of the tenant for a considerable period of time without repair, it is quite frequently argued that the tenant, if thereby injured, could only have escaped the barrier of the defense of assumption of risk by having terminated his tenancy and having removed from the demised premises. It is proposed that he can remain only at his own risk.
Such an unqualified principle of law would in all such cases exonerate from liability landlords who through deliberate neglect and avaricious motives have subjected their dependent and hopeful tenants to their manifest dereliction of duty. The law is all right as it is. The established test of the tenant's voluntary assumption of the risk is whether *74 an ordinarily prudent person would, under the same or similar circumstances, have incurred the risk which the conduct involved. Solomon v. Finer, 115 N.J.L. 404 (Sup. Ct. 1935).
This plaintiff was 73 years of age, as previously stated, had obviously resolved to make the demised premises his permanent home, and derived his means of support from an old-age pension. In view of all the circumstances we are disinclined to believe that the defendant should have been, as a matter of law, liberated from his alleged liability.
While the evidence strongly supported the conclusion that the plaintiff assumed the known risk, yet we are of the opinion that it was for the jury to determine whether an ordinarily prudent person would, under the same or similar circumstances, have incurred the risk which his conduct involved.
The judgment is reversed and a venire de novo awarded.