**DE EUGENIO**

v.

**ALLIS-CHALMERS MFG. CO.**

**No. 11102.**

United States Court of Appeals, Third Circuit.

Argued Nov. 2, 1953.

Decided Feb. 12, 1954.

Rehearing Denied March 11, 1954.

Sidney P. McCord, Jr., Camden, N. J. (Starr, Summerill & Davis, William F. Hyland, Camden, N. J., on the brief), for appellant.

Robert G. Howell, Bridgeton, N. J. (George H. Stanger, Vineland, N. J., on the brief), for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Plaintiff lost his right arm as a result of its being crushed between the rollers of a hay baler which had been manufactured by defendant. In accordance with the jury's verdict for plaintiff, we state that view of the record which is most favorable to him.

In 1940 defendant began designing a revolutionary device, a baler which would make cylindrical bales of hay. The pilot baler was built in May of 1941. That and several other machines of its kind were tested on farms through 1946, when commercial production was begun. As of June, 1947, about three thousand machines had been produced and distributed for sale.

The machine, called a Roto-Baler, was designed to operate as follows: The baler is mounted on a single axle which is toward the rear. Forward of the axle, there is a chute, the front of which slides over the ground on skids. On the chute there is a conveyer which scoops up the windrowed hay and carries it up to rolls which compress it into a thin mat. The mat is rolled into a cylinder, and, when the cylinder of hay has reached proper size, the conveyer stops, and the bale is then wrapped with twine and

ejected from the rear of the machine.[1] The baler is drawn over the ground behind and to the left of a tractor which also supplies the power for the machine's moving parts through a power take-off shaft. The chute is about seven feet long, and, when the machine is operated at the maximum speed recommended by defendant, an object would be carried from the bottom to the rollers in about one and three-quarter seconds. At the speed it was being operated on the day of the accident, the time was estimated at two or three seconds.

Plaintiff, his father and two brothers, operated a farming partnership in New Jersey. Defendant, through its dealer, Gawin, sold a Roto-Baler to the partnership, and, together with one Robb, defendant's field representative, delivered it to the firm at one of its farms. The baler was tested when delivered and was found to be operating improperly. The hay would accumulate or "bulldoze" in front of the chute. This bulldozing prevented a smooth flow of hay into the chute and into the rolls and a consequent irregularity in the size of the bales. A mass of the accumulated hay would suddenly pass up the chute and would literally choke the rolls, causing the entire unit to slacken its forward motion. When the lump of hay cleared the rolls, the baler would lunge forward or from side to side in an erratic manner, the sideways motion being aggravated by the fact that this was a two-wheeled machine with its one axle toward the rear, thus allowing the front of the chute to move to left or right as the baler pivoted on its axle. Furthermore, the pile-up of hay in front of the chute required that a man walk along at the left front of the chute and, with a fork, toss the hay into the chute. This was contrary to the machine's intended manner of operation since it was designed and sold as a one-man baler, the

tractor driver supposedly being the only man required.

The above difficulties being discovered immediately upon delivery of the baler, Gawin and Robb remained for about two and one-half hours trying to correct them but were unsuccessful. They returned the next day and worked on the baler for about four and one-half hours while it was in operation but to no avail. The third time the machine was used Gawin again attempted to correct the faulty operation. On the occasions when Gawin and Robb were trying to adjust the machine, one of them would walk at the left front of the chute tossing the accumulated hay onto the chute, and, on those same occasions and in the presence of Gawin and Robb, plaintiff and one of his brothers did likewise.

On the day of the accident, plaintiff and his brothers were baling hay. It was the fourth time the baler had been used, but it still was not functioning properly. To take care of the hay that was piling up in front of the chute, plaintiff was walking along at its left front, just as Gawin and Robb had done. As stated, at times a large mass of the accumulated hay would pass up the chute and into the rolls, and, when it had cleared the rolls, the baler would lunge forward or to the side. Seconds after one such lump had passed up the chute, plaintiff was knocked off balance when struck on the shin by the left skid of the chute. He fell onto and was carried up the chute, and his right arm went through the rolls, up to his shoulder.

All the testimony as to how the baler actually did operate, as to what Gawin and Robb did, and as to the circumstances of the accident came from plaintiff and his witnesses and was, thus, undisputed. Defendant's only witness, the man who designed the machine, testified as to its design and construction and the manner in which it was supposed to operate.

1. A picture of an identical Roto-Baler is reprinted in Yaun v. Allis-Chalmers Mfg. Co., 1948, 253 Wis. 558, 34 N.W.2d 853, 854–855.

The special interrogatories and the jury's answers are set out below.[2]

■ The case was in the United States District Court for the District of New Jersey solely by reason of diversity jurisdiction. Therefore, we must be guided by the substantive law of New Jersey. We have been unable to find any New Jersey cases which are of any help, nor has our attention been directed to any. Hence, we find the New Jersey law as best we can from the materials at hand. Diesbourg v. Hazel-Atlas Glass Co., 3 Cir., 1949, 176 F.2d 410.

Plaintiff had three strings to his bow. He charged negligence in the design and construction of the baler in that there was no barrier guard over the chute to prevent a man from falling onto it; negligence by Gawin and Robb in adjusting the baler or leaving it, improperly adjusted, for use by plaintiff and his partners; and negligence by Gawin and Robb in the instructions given as to the proper method of operation of this particular machine. If any one of those points has merit, the case was for the jury. Consequently, we will discuss only the matter of the alleged negligent instructions by Gawin and Robb since we think there is merit in that point.

■ This baler was designed and intended to be used as a one-man operation. Once the hay was windrowed, the tractor driver was supposed to be the only human needed for the correct functioning of the machine. This particular baler, however, did not so function. Because the chute was not properly picking up the hay, large masses of it were piling up at the front of the machine. This caused the flow of hay along the chute and into the rolls to be uneven, and, in turn, produced bales of irregular size. When a large mass of hay would pass into the rolls, the baler would slow down in its forward motion and then lunge ahead or to the side when the lump had cleared the rolls. It appears that Gawin and Robb did what they could to synchronize the timing and to adjust the machine but without success. While doing so, one of them walked along at the left front of the chute so that he could handle the accumulation of hay by pushing or lifting it onto the chute with a fork. This seems to have been the only way or, at least, the way selected by Gawin and Robb to make the machine operate so that it would even approximate the results it was built to produce. Their attempts at correction having failed, the baler was left with the partnership. It is a mistake to view this particular machine as a one-man baler simply because that was the way it was supposed to operate. In fact, it never did so operate. From the very beginning, two men were needed: the tractor driver and a man walking at the left front of the chute. At least, the jury could have so found. Since the baler would not operate as a one-man machine, Gawin and Robb, as defendant's representatives, had a clear duty to use due care in instructing plaintiff. Burdened by that duty, we think it was for the jury to say whether they breached it, that is, subjected plaintiff to an unreasonable risk of harm, by instructing him that the proper way to operate this machine was to walk along near the left front of the chute in order to fork the hay onto the conveyer. So placed, plaintiff was put in a position of rather obvious danger. If he were to trip over the stubble in the hay field or if he were

2. "1. Was the defendant, Allis-Chalmers, guilty of negligence
  (a) In the design or construction of the machine in question?  Yes
  (b) In the manner of giving to the purchasers instructions for the intended use of the machine?  Yes
  (c) In the manner of adjusting the machine?  Yes

"2. If you answer question #1 in the affirmative, namely, that the defendant, Allis-Chalmers was guilty of negligence, was such negligence the proximate cause of the injury sustained by DeEugenio?  Yes
"3. (a) Was Mr. DeEugenio guilty of contributory negligence?  No
    (b) Did Mr. DeEugenio assume the risk involved?  No"

tripped by a sudden lunge of the chute (as it appears that he was), the danger of being scooped up by the chute and carried into the rolls was quite foreseeable.

It is probably true, as defendant insists, that there is no duty to warn against the obvious, that is, that defendant had no duty to warn plaintiff to stay away from the front of the chute since the risk of injury by being carried into the rolls was clear. But that does not end the matter. Although there may have been no duty to warn plaintiff to stay clear of the chute, manifestly there was a duty to refrain from directing him to place himself there by representations that only by so doing could the baler be made to do its work. The negligence was not in failing to warn plaintiff to stay away but in demonstrating to him that it was proper and safe to come near, because defendant, in those circumstances, had every reason to know that such instruction would cause injury, and it is thus liable for the natural consequences of its act.

Defendant asserts that Gawin and Robb fulfilled their duty, arguing that it is incredible that plaintiff would interpret what they did in attempting to adjust the machine as an illustration of the recommended manner of operation. Plaintiff's credulity, however, was not so great as to enable us to say, as a matter of law, that he was wholly unjustified in taking Gawin and Robb's conduct as a recommendation as to the proper manner of operation of a hay baler which was supposed to operate with the help of only one man but which really required two. It is true that Gawin and Robb did not expressly direct plaintiff to walk where they did. They said nothing one way or the other on the matter. But we have come past the time when the law attaches conclusive significance to what a man says and completely ignores what he does. The jury could well have reasoned that Gawin and Robb, as reasonable men, should have foreseen that what they did might be construed by plaintiff, acting as a reasonable man, as a recommendation, if not actual instruction, that this was the way to make this particular baler do its job. In this connection, the status and relationship of the parties is important. Plaintiff and his partners had just bought the machine, and defendant's agents had come to demonstrate the proper and most efficient manner in which to use it. Under these circumstances, we cannot say as a matter of law that it was unreasonable for the plaintiff to interpret equivocal acts of the demonstrators in handling the machine as concrete suggestions as to its use since they hold themselves out as experts in the proper use of their device. The weight of this factor is increased here since the Roto-Baler was a new type of machine. It was not something which farmers had been using for years.

It is not surprising to find the defenses of contributory negligence and assumption of risk appearing in this case since the rolls, the physical cause of plaintiff's injury, were not a hidden danger but were obvious. In such a case, a plaintiff might find it difficult to show a defendant's negligence without, by the same evidence, establishing his contributory negligence.

Consistent with the majority rule, New Jersey requires that defendant prove contributory negligence and assumption of risk. Kaufman v. Pennsylvania R. R., 1949, 2 N.J. 318, 66 A.2d 527. As to both defenses, the test is whether plaintiff acted, in regard to his own safety, as would the reasonably prudent person. When fair-minded men could reach different conclusions following an application of that test, the question of which of the varying inferences should be drawn is for the jury. Rapp v. Public Service Coordinated Transport, 1952, 9 N.J. 11, 86 A.2d 676; Solomon v. Finer, 1935, 115 N.J.L. 404, 180 A. 567; Scheirek v. Izsa, 1953, 26 N.J. Super. 68, 97 A.2d 167. Having these concepts in mind, we think it abundantly clear that the question of assumption of risk and contributory negligence were for the jury. We are told that plaintiff

was an adult farmer of at least average intelligence and was familiar with farm equipment; that he had observed the baler in operation on three prior occasions and that the risk of injury from the rolls was obvious; consequently, he voluntarily exposed himself to a known danger. But the Solomon case, supra, tells us that that alone is not enough to bar plaintiff as a matter of law; to have that effect the voluntary exposure must be unreasonable,[3] and it is for the trier of fact to say whether that inference should be made. The weighty factor which defendant seems to overlook is that plaintiff was doing just what defendant's demonstrators had done. Conduct which might otherwise bar a plaintiff as a matter of law must be looked at in a different light when the seller's experts have indicated that that is the proper way to operate the purchased machine. Under these circumstances, whether plaintiff's reliance upon the experts' instructions was unreasonable was for the jury.

There are two other matters, which defendant says require a new trial.

■ The first relates to the admissibility of certain evidence. In answer to an interrogatory propounded by plaintiff, defendant indicated that there were seven accidents involving Roto–Balers occurring between May 22 and June 20, 1947, the date of plaintiff's injury. In order to show notice to defendant of the dangerous character of the machine, the interrogatory and answer were read to the jury over defendant's objection. It is said that the answer was inadmissible for two reasons: in each of the seven accidents, the injured person was, in deviation from instructions, trying to engage the twine or to clear the rolls of hay or rocks while the machine was in operation, and, even supposing that the prior accidents were similar to plaintiff's, they occurred so close to plaintiff's in point of time that there was no showing that notice was brought home to de-

fendant in time to have taken any remedial action before plaintiff was hurt. We think, however, that the evidence was admissible to show notice to defendant of the dangerous character of the machine, Baltimore & O. R. R. v. Felgenhauer, 8 Cir., 1948, 168 F.2d 12, 17; Fed.R.Civ.P. 43(a), 28 U.S.C., and, since, in each of the seven accidents defendant emphasized that the person injured "deviated from instructions," the necessity to refrain from giving improper instructions. As to the time argument, the answer itself states that "Accidents reported are from the records of the company from 1941 to June 20, 1947."

■ Defendant's next objection is unique. We are told that a possible lack of unanimity in the jury's verdict may be hidden under the form in which the questions were submitted to the jury. As footnote 2 shows, the jury was asked whether defendant was negligent in any or all of three respects, design, adjustment, or instruction. The next question required the jury to state, assuming an affirmative answer to the first, whether such negligence was the proximate cause of plaintiff's injury. Defendant contends that the causation question, too, should have been broken down into three parts, corresponding to the three items of possible negligence, so that the jury would have been required to be precise in its finding on causation. Otherwise, the argument runs, four jurors may have thought the negligent design was the proximate cause, four others may have relied on the negligent adjustment, and the final four on the negligent instructions. We are directed to a Wisconsin case, Fontaine v. Fontaine, 1931, 205 Wis. 570, 238 N.W. 410, as authority for the proposition. The trouble with defendant's position is that the Wisconsin statute requires the submission of special interrogatories under certain circumstances.[4] That statutory mandate cannot bind procedural matters in the federal courts, which are governed as

---

3. Restatement, Torts § 466, comment *c* (1934).

4. Wis.Stat.1935, § 270.27.

to special verdicts and interrogatories by Rule 49 of the Federal Rules of Civil Procedure. Tillman v. Great American Indemnity Co., 7 Cir., 1953, 207 F.2d 588, 593; Lang v. Rogney, 8 Cir., 1953, 201 F.2d 88, 97. Rule 49 clearly leaves the matter of the form of a special verdict and interrogatories to the sound discretion of the trial court. Norfolk Southern Ry. v. Davis Frozen Foods, Inc., 4 Cir., 1952, 195 F.2d 662, second appeal, 4 Cir., 204 F.2d 839, certiorari denied, 1953, 346 U.S. 824, 74 S.Ct. 41; Mourikas v. Vardianos, 4 Cir., 1948, 169 F.2d 53. The trial court certainly did not abuse its discretion in denying defendant's request here.

Furthermore, the relevant legal points were thoroughly laid out in the court's charge, so that what defendant suggests could not have occurred unless the jurors disregarded their instructions.

We have examined the other contentions of defendant and find them to be unsubstantial. The judgment of the district court will be affirmed.