John TOMICICH, Plaintiff,

v.

WESTERN–KNAPP ENGINEERING CO., a corporation, Kaiser Engineers, a corporation; Link Belt Company, a corporation, Arthur G. McKee & Company, a corporation; and Henry J. Kaiser Company, a corporation; jointly and severally, Defendants.

Civ. No. 1565.

United States District Court
D. Montana,
Missoula Division.

Nov. 8, 1968.

Knight & Dahood, Anaconda, Mont., J. H. McAlear, Red Lodge, Mont., Robert H. Wilson, Hardin, Mont., for plaintiff.

Meyer & Purcell, Butte, Mont., for defendants, Kaiser Engineers and Henry J. Kaiser Co.

Corette, Smith, Dean & Wellcome, Butte, Mont., for defendant, Link Belt Co.

Poore, McKenzie, Roth & Robischon, Butte, Mont., for defendants, Western-Knapp Engineering Co., and Arthur G. McKee & Co.

RUSSELL E. SMITH, Chief Judge.

Plaintiff, an employee of the Montana Phosphate Products Company, lost an arm while cleaning the mud from a conveyor system. This action is brought to recover damages from those who designed, erected and supplied the components for the conveyor. Western-Knapp Engineering Co. (Western-Knapp), Arthur G. McKee & Company and Link Belt Company have moved for summary judgment.[1] The motions are based upon the pleadings, depositions and plaintiff's answers to interrogatories.

## WESTERN-KNAPP

Western-Knapp designed and supervised the installation of the conveyor system. It is alleged that Western-Knapp was negligent in failing to design equipment which would automatically remove mud from the sheaves on which the conveyor belt moved, in designing certain supporting members in such a manner that small accumulations of mud on the sheaves would cause the conveyor to malfunction, in failing to provide sufficient lighting and in failing to provide plaintiff with a safe tool for the removal of the mud. When the conveyor was operating as designed, the parts which are involved here were completely protected by removable plywood panels. An emergency cord which would stop the movement of the conveyor system ran along the outside of the plywood panels and was readily available.

When mud accumulated on the sheaves over which the belt moved, it caused the belt to rub violently against some braces in the conveyor structure. Continued operation of the conveyor at such a time would damage and perhaps sever the conveyor belt, but it was not shown by the evidence, nor is it suggested by the argument, that the conveyor running

---

1. Arthur G. McKee & Company is treated as one with Western-Knapp because its liability, if any, is vicarious and is dependent upon the liability of Western-Knapp.

under these conditions posed any threat to human life or limb.

It is assumed for the purposes of this opinion that the design of the conveyor was faulty and that the conveyor was defective in that it did permit the accumulation of mud and that accumulations of mud did cause the conveyor to malfunction. It is assumed that these defects might have been remedied by a different design and that in a properly designed conveyor small accumulations of mud would not cause the conveyor to malfunction. If the mud had not accumulated, or in accumulating, it had not caused the belt to rub, there would have been no necessity to clean the machine and plaintiff would not have been injured as he was.

On the day of the accident mud had accumulated on the sheaves and the conveyor belt was rubbing upon the structural braces. Plaintiff discovering this condition, took a piece of angle iron about two feet long and attempted to scrape the mud from the sheaves. This operation required that he place his arm in close proximity to the moving belt and the sheaves. His arm was caught. The rules of plaintiff's employer, of which plaintiff was aware, forbade him to work on moving equipment. Plaintiff recognized the danger of working near moving machinery.

The conveyor could have been cleaned while the machinery was stopped, although for one man, and plaintiff was alone at the time, the chore would have been difficult. Plaintiff excuses his action in working on the moving machine on a variety of grounds. As previously indicated, a cord could be used to pull a switch to shut the conveyor down and this cord was located at the place of the accident. In order to start the equipment, however, the plaintiff would have been required to go about

250 feet to a starting switch over a somewhat dangerous path. It is possible that this trip would have had to be repeated several times, because when the machine was started and shut down again there was no way of knowing which portion of the roller would be exposed and it would be possible to keep re-exposing the parts which had already been cleaned. Plaintiff feared that if he took the time necessary to clean the machine while it was stopped, he would not get sufficient production and would perhaps be fired. Further excuses were offered to the effect that the employer did not furnish plaintiff with a padlock with which he might lock the electrical starting switch in an off position and that it is dangerous to work on shutdown machinery which may be started by another workman. The switches were designed to be locked by padlocks. Plaintiff further complains that his employer did not furnish him with a long enough iron to clean the sheaves, although he had requested a scraper and had on previous occasions used a longer piece of iron. Plaintiff's superiors had seen him cleaning the sheaves while the equipment was moving on previous occasions.

Under these circumstances it may be that in an action between plaintiff and his employer any negligence on the part of the plaintiff would be excused, because the employer condoned [2] or ordered [3] the dangerous practice. The fact remains, however, that there was a safe way to clean the equipment and that the plaintiff, whether under the coercion of his employer or not, chose a dangerous way to do it. A problem arises here apart from that of contributory negligence, i. e.: What is the extent of the designer's duty under such circumstances? [4]

The Montana Supreme Court has not passed upon the problem, but the follow-

2. Myers v. Little Church By the Side of the Road, 37 Wash.2d 897, 227 P.2d 165 (1951).

3. Rush v. Brown, 153 Kan. 59, 109 P.2d 84 (1941).

4. In this opinion the court equates the designer's duty with that of the producer of consumer items. It is not at all clear that such an equation should be made. See La Rossa v. Scientific Design Co., Inc., 402 F.2d 937 (3 Cir. Oct. 3, 1968).

ing are among the host of cases to the effect that a manufacturer has no duty to guard against obvious dangers: Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950); Stevens v. Durbin-Durco, Inc., 377 S.W.2d 343 (Mo.1964); Parker v. Heasler Plumbing & Heating Co., 388 P.2d 516 (Wyo.1964); Bradshaw v. Blystone Equipment Co. of Nevada, 79 Nev. 441, 386 P.2d 396 (1963); Royal v. Black & Decker Mfg. Co., 205 So.2d 307 (Fla.App.1968); Tyson v. Long Mfg. Co., 249 N.C. 557, 107 S.E.2d 170, 78 A.L.R.2d 588 (1959); Standard Conveyor Co. v. Scott, 221 F.2d 460 (8 Cir. 1955); Jamieson v. Woodward & Lothrop, 101 U.S.App.D.C. 32, 247 F.2d 23 (1957); Brown v. General Motors Corp., 355 F.2d 814 (4 Cir. 1966); Evans v. General Motors Corp., 359 F.2d 822 (7 Cir. 1966); Neusus v. Sponholtz, 369 F.2d 259 (7 Cir. 1966); Bowman v. Kaufman, 387 F.2d 582 (2 Cir. 1967).

Plaintiff relies upon Greeno v. Clark Equipment Company, 237 F.Supp. 427 (N.D.Ind.1965), and Brandon v. Yale & Towne Mfg. Co., 220 F.Supp. 855 (E.D. Pa.1963). Both of these cases involved fork lifts.

In the *Greeno* case the nature of the defect complained of is not disclosed in the opinion, but the court specifically indicated that it would not extend the manufacturer's liability to a product whose danger was known and appreciated by reasonable persons exercising ordinary care.

In the *Brandon* case the lift, as sold by defendant, could not be safely used for the purposes for which it was bought. That is not true here. The opinion in *Brandon* intimates that the defendant

would have been excused had the plaintiff been warned of the danger. In this case a warning that it is dangerous to place an arm in close juxtaposition to a heavy belt running on heavy sheaves would not have told the plaintiff anything that he was not required to know.

In the cases of Allis-Chalmers Mfg. Co. v. Wichman, 220 F.2d 426 (8 Cir. 1955), and De Eugenio v. Allis-Chalmers Mfg. Co., 210 F.2d 409 (3 Cir. 1954), manufacturers were held liable. Both cases involved hay balers and the dangers were obvious, but the use being made of the machines was in accordance with the express or implied directions of the manufacturers. Such is not the case here. In Wagner v. Larson, 257 Iowa 1202, 136 N.W.2d 312 (1965), the manufacturer of a silo unloader was held to be liable to a farm laborer who was injured in attempting to get it started after it stuck in the silage. If for no other reason the case is distinguishable because the plaintiff was employing the only means to get the machine started. Apparently the plaintiff in Wagner v. Larson did not have an opportunity to choose between a safe and dangerous method of putting the machine back in operation.

There has been some criticism of the broad rule expressed in Campo v. Scofield, supra, to the effect that a designer-manufacturer has no duty to provide safeguard against dangers which are obvious,[5] and that the obviousness of the danger should be but one factor to be considered in determining the basic question: Did the design create an unreasonable[6] risk to users of the product which the manufacturer should have foreseen?

5. See 1 Frumer & Friedman, Products Liability § 702 (1960); Dix, Manufacturer's Negligence of Design and Directions for Use of a Product, 71 Yale L.J. 816, 837–41 (1962); 2 Harper & James, The Law of Torts § 285 (1956); Messina v. Clark Equipment Co., 263 F.2d 291, 293 (2 Cir. 1959) (Clark, J. dissenting); Jamieson v. Woodward & Lothrop, 101 U.S.App. D.C. 32, 247 F.2d 23, 34 (1957) (Washington, J., dissenting); Goldsmith v.

Martin Marietta Corp., 211 F.Supp. 91 (D.Md.1962).

6. It should be noted that the doctrine of strict liability applies only when the risk is unreasonably dangerous. Restatement (Second) Torts § 402A (1965). As indicated in footnote 4, it is not clear that the doctrine of strict liability applies in this case.

It may be that the Montana Supreme Court, faced with the problem, would be impressed with the criticism and would extend a manufacturer's or designer's liability to cases where the danger is obvious but possibly not appreciated. (See the dissents in Jamieson v. Woodward & Lothrop and Messina v. Clark Equipment Co. supra, Note 5) and to cases where injuries may be expected to happen to those who are momentarily forgetful. (See Frumer & Friedman, supra Note 5) No case has extended the manufacturer's duty as far as it must be extended in this case if liability is to be imposed and it would require a stretching of the language of the critics of Campo v. Scofield, supra, to hold that a risk or danger is unreasonably great where harm can come only if the injured person deliberately exposes himself to a risk as obvious as that created by a heavy belt moving over heavy sheaves.

## LINK BELT

From the affidavits and the supporting documents on file it appears that Link Belt Company received a request to quote prices for certain of the components of the conveyor. Prices were quoted and Link Belt did supply the components. Link Belt did not design the system, did not assemble the components and did not inspect the installation during or after construction. There is no suggestion in the pleadings, or the results of the extensive discovery that the components supplied by Link Belt were defective in any way. Actually no argument is advanced in support of Link Belt Company's liability.

Whatever may be the duty of a supplier of chattels in Montana, there is no material issue of fact to be tried in this case so far as Link Belt Company is concerned.

The motions for summary judgment made by defendants, Western-Knapp Engineering Company, Arthur G. McKee & Company, and Link Belt Company, are granted, and plaintiff is denied all relief as to said defendants.