561 P.2d 355 (1976)
Larry E. PUST, Plaintiff-Appellant, Cross-Appellee,
v.
The UNION SUPPLY COMPANY, a Colorado Corporation, Defendant-Appellee, Third-Party Plaintiff, Cross-Appellant,
v.
HOLLY SUGAR CORPORATION, a New York Corporation, Third-Party Defendant-Appellee, Cross-Appellee, Cross-Appellant.
No. 75-384.
Colorado Court of Appeals, Div. III.
December 16, 1976.
Rehearing Denied January 13, 1977.
Certiorari Granted March 14, 1977.
*358 Carrigan & Bragg, P.C., Douglas E. Bragg, Denver, for plaintiff-appellant, cross-appellee.
Yegge, Hall & Evans, John R. Trigg, Philip E. Lowery, Denver, for defendant-appellee, third party plaintiff, cross-appellant.
Zarlengo, Mott & Zarlengo, John C. Mott, Denver, for third party defendant-appellee, cross-appellee, cross-appellant.
Selected for Official Publication.
STERNBERG, Judge.
In this products liability case, the trial court, at the close of all the evidence, dismissed the complaint which was based on strict liability and implied warranty. The plaintiff Larry Pust appeals contending that the issues should have been submitted to the jury. Defendant Union Supply Company cross-appeals, alleging error in certain evidentiary rulings, as well as the dismissal of its third-party complaint for indemnity against Holly Sugar Corporation.[1] While we agree with the trial court's evidentiary rulings, we conclude that the court erred both in dismissing the complaint and the third-party complaint and we therefore reverse the judgments.
Pust was employed by Holly in a sugar beet refining plant in Sidney, Montana. He worked in an area at the plant near a conveyor belt which was propelled by a motor driven roller, and which carried pulp for processing. There was evidence that Pust's job required him to reach under the conveyor belt with a flat metal pole to scrape away loose pulp. While performing this task, his arm was caught, drawn under the roller, and nearly severed from his body at the shoulder.
Pust's injuries resulted in amputation of his arm and part of his shoulder; however, a contributing cause to the amputation was the negligence of Pust's treating physician. A malpractice suit against that physician was settled for $67,000, and a covenant not to sue was executed. Pust also recovered approximately $25,000 from Holly under the Montana Workmen's Compensation law.
The details of design and manufacture of the conveyor system are these: The engineering *359 department of Holly prepared bid drawings and sent them to potential manufacturers. Defendant Union, the low bidder, prepared its own drawings of the conveyor system and sent them back to Holly. Union's plans made certain changes in the component parts and added mechanical engineering specifications. Union had portions of the system built by various subcontractors, partially assembled the conveyor, and shipped it in sections to Holly. Holly provided the motor, conveyor belting, and supporting structure and assembled the entire system in its plant.

I. STRICT LIABILITY
Colorado has adopted the doctrine of strict liability as stated in Restatement (Second) of Torts § 402A. Hiigel v. General Motors Corp., Colo., 544 P.2d 983 (1975); Bradford v. Bendix-Westinghouse Auto Air Brake Co., 33 Colo.App. 99, 517 P.2d 406 (1973). Section 402A provides:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
At the trial Pust produced evidence, some of which Union contested, that (1) there is a clear, well recognized danger in the "nip point" portion of the conveyor system, that being the area under the belt and near the spinning roller where items are subject to being drawn into the conveyor system, (2) this hazard could be eliminated by installing an inexpensive and easily manufactured guard, which is used on many conveyor systems, and (3) in the absence of guards, at a minimum, a warning should be placed on the conveyor indicating the hazard involved in the nip point. Thus, if the strict liability doctrine applies to manufacturers of component parts, as well as to manufacturers of finished products, there was an evidentiary foundation requiring submission of the case to the jury. In order to determine whether strict liability does so apply, the principal issue in this appeal, we must analyze a manufacturer's duty to provide safety devices and warnings.

A. Failure to Provide the Guards

Pust contends that Union's failure to provide guards may constitute a defect under § 402A. We agree.
It is the law in Colorado that a properly manufactured product is defective if its design is unreasonably dangerous. Bradford v. Bendix-Westinghouse Auto Air Brake Co., supra. Union contends, however, that Holly designed the conveyor and that Union is therefore not liable for failing to design and specify guards. Union asserts that manufacturers of defective products, who leave the design or assembly to others, are not to be held responsible for any injury caused by such product.
We see no reason to distinguish between manufacturers or sellers and designers. Section 402A makes no such distinction. Comment f. thereto provides:
"The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such product, to any wholesale or retail dealer or distributor . . .." (emphasis supplied)
Since it merely manufactured what Holly asked it to, Union argues that it could not be expected to add guards when none were requested. This suggests that Union was relieved of any duty it may have had under 402A if it justifiably believed that the purchaser, Holly, would provide such safety devices. We are not persuaded by this argument.
In Bexiga v. Havir Manufacturing Corp., 60 N.J. 402, 290 A.2d 281, 285 (1972), the Supreme Court of New Jersey, on facts similar to those here, held:
"Where a manufacturer places into the channels of trade a finished product *360 which can be put to use and which should be provided with safety devices because without such it creates an unreasonable risk of harm, and where such safety devices can feasibly be installed by the manufacturer, the fact that he expects that someone else will install such devices should not immunize him. The public interest in assuring that safety devices are installed demands more from the manufacturer than to permit him to leave such a critical phase of his manufacturing process to the haphazard conduct of the ultimate purchaser. The only way to be certain that such devices will be installed on all machineswhich clearly the public interest requiresis to place the duty on the manufacturer where it is feasible for him to do so."
See also Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964).
The public policy reasons for holding installation of safety devices to be a non-delegable duty are compelling. As stated in 402A, Comment c.:
"[T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; . . . that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."
See Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893 (1975); Scott v. Dreis & Krump Manufacturing Co., 26 Ill.App.3d 971, 326 N.E.2d 74 (1975); Balido v. Improved Machinery, Inc., 29 Cal.App.3d 633, 105 Cal.Rptr. 890 (1973); Ford Motor Co. v. Matthews, 291 So.2d 169 (Miss.1974); Rhoads v. Service Machine Co., 329 F.Supp. 367 (E.D.Ark.1971); Wheeler v. Standard Tool & Manufacturing Co., 497 F.2d 897 (2d Cir. 1974); and Note, 86 Harv.L.Rev. 923 (1973).
Union contends that the Bexiga rule applies only to finished products and therefore is inapplicable here because the conveyor, as delivered, was not a finished product, but rather consisted of component parts to be assembled by Holly. Indeed, the trial court dismissed Pust's suit based primarily on this argument. This was error.
The cases of Jordan v. Whiting Corp., 49 Mich.App. 481, 212 N.W.2d 324 (1973), and Lockett v. General Electric Co., 376 F.Supp. 1201 (E.D.Pa.1974), aff'd, 511 F.2d 1394 (3d Cir. 1975), relied upon by Union did not arise under § 402A and are factually distinguishable. Also, in a caveat to § 402A, it is stated:
"The Institute expresses no opinion as to whether the rules stated in this Section may not apply
(1) to harm to persons other than users or consumers;
(2) to the seller of a product expected to be processed or otherwise substantially changed before it reaches the user or consumer; or
(3) to the seller of a component part of a product to be assembled." (emphasis supplied)
However, 402A, Comment p. states:
"It seems reasonably clear that the mere fact that the product is to undergo processing, or other substantial change, will not in all cases relieve the seller of liability under the rule stated in this Section."
And, in Hiigel v. General Motors Corp., supra, the court stated:
"[C]omment q under 402A, suggests. . . that where there is no change in the component part itself, but it is merely incorporated into something larger, the strict liability will be found to carry through to the ultimate user or consumer. We find this entirely consistent with the purposes and provisions of *361 § 402A, and we so hold." (latter emphasis supplied)
Therefore, the component part defense has no merit here. Except for a few parts unrelated to the guarding of the nip points, Union shipped an unassembled conveyor. There was no evidence tending to prove that the conveyor was improperly assembled. Thus, a jury could reasonably infer that the accident occurred because the conveyor in its entirety, or one of the components, was manufactured and sold without a guard and that it was therefore unreasonably dangerous.
Moreover, as stated in Bradford v. Bendix-Westinghouse Auto Air Brake Co., supra:
"Allegations of activities which altered the condition of the product after delivery to the user present problems of proximate causation, and are not the problem addressed by Section 402A(1)(b)."
And, it cannot be said, as a matter of law, that the absence of guards was not a proximate cause of the injury; hence, the matter should have been submitted to the jury for resolution.
We are not unmindful of the factual differences between the manufacturer in Bexiga and Union here. In Bexiga the custom of the trade was for the designer-manufacturer of the machine to leave the function of safety device installation to the purchaser. Here, on the other hand, it is argued that the design was provided by Holly and the conveyor merely manufactured or fabricated by Union. Thus, it is contended that Union properly left both the design and installation of safety devices to the purchaser, Holly. We do not find this distinction crucial, however. The fact remains that the conveyor could be found to be unreasonably dangerous, and therefore defective, when it left Union's hands.
It would be anomalous, indeed, to adopt 402A, and yet permit a manufacturer to insulate itself from liability by categorizing the sale of its products as components simply because they have to be assembled, or to permit it to manufacture a product for which it delegates to the purchaser either the duty of designing or incorporating safety devices. Thus, we hold that a fabricator, who manufactures a product according to plans submitted by the ultimate user cannot avoid liability even if the design submitted is unsafe, provided it is feasible for him to install safety devices.
Union argues further that since Holly was to install the motor and belt as well as assemble the "components" into a conveyor, Union cannot be held liable under 402A. The thrust of this argument is based on the contention that without a motor, the conveyor is incapable of hurting anyone. An analogous assertion equally lacking in persuasiveness is that a toy model sold to and to be assembled by a child is not a finished product where the child must supply the batteries to propel it, and thus any recovery for injury caused by defects in the model would be barred. Cf. Kinard v. Coats, Inc., Colo.App., 553 P.2d 835 (1976); Bradford v. Bendix-Westinghouse Auto Air Brake Co., supra.
In summary then, we hold it was error for the trial court not to have submitted for the jury's determination, based on instructions containing the elements of § 402A, the issues of whether the lack of guards constituted a defect in the conveyor system manufactured and sold by Union, and whether the defect was a proximate cause of Pust's injuries.

B. Warning

Pust also argues that the conveyor was defective under 402A because no warning was provided at or near the nip point. In Hiigel v. General Motors Corp., supra, the court held that a failure to warn adequately can render a product, otherwise free from defect, defective for purposes of 402A. Quoting with approval Comment j. of the Restatement (Second) of Torts § 402A, the court stated:
"In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use."
Based upon Tomicich v. Western-Knapp Engineering Co., 292 F.Supp. 323 *362 (D.Mont.1968), aff'd, 423 F.2d 410 (9th Cir. 1970), Union contends, however, that where there is a patent and obvious danger associated with a product, one injured from its use cannot recover against the manufacturer. Tomicich is essentially a reiteration of the "open and obvious" rule which had its origin in Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802, 804 (1950). In Campo, the New York court held that a manufacturer "is under no duty to guard against injury from a patent peril or from a source manifestly dangerous." The "open and obvious" rule of Campo has been the subject of frequent and fervent attack by legal commentators, see e.g., L. Frumer & M. Friedman, Products Liability § 2.02; Rheingold, Expanding Liability of the Product Supplier: A Primer, 2 Hofstra L.Rev. 521; Comment, 28 Fordhan L.Rev. 776 (1959), and significantly, the rule of Campo has recently been expressly disavowed by the New York Court of Appeals. Micallef v. Miehle Co., 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976). We find Micallef and the position taken by the commentators to be persuasive and therefore reject the Campo "open and obvious" rule.
Moreover, by relying on the open and obvious rule of Campo, Union has attempted to interject the defense of "assumption of risk" into this case.
In Hiigel v. General Motors Corp., supra, the court adopted the approach of § 402A, Comment n. regarding "what commonly passes under the name of assumption of risk." The court stated:
"[T]he defendants [are] entitled to show, if they can, that the plaintiff `voluntarily and unreasonably proceed[ed] to encounter a known danger.' This showing would constitute a defense to the actions under § 402A."
This defense presents a jury question, however, and would require proof that Pust had "knowledge of the specific dangers arising out of the precise defects asserted, or that he voluntarily and unreasonably proceeded to encounter those dangers despite his awareness of the defects." Culp v. Rexnord & Booth-Rouse Equipment Co., Colo.App., 553 P.2d 844, 845 (1976). See also Hensley v. Sherman Car Wash Equipment Co., 33 Colo.App. 279, 520 P.2d 146 (1974). A general knowledge of the danger of machinery with moving parts or a general awareness that if part of Pust's body were to become caught in the moving parts of the machinery and cause injury is insufficient to satisfy the requisites of this defense. On retrial, therefore, for the defense to be viable, the evidence must show that Pust had actual knowledge of the specific danger created by the alleged defect in the conveyor and not merely a general understanding that it could be dangerous. Hiigel v. General Motors Corp., supra; Culp v. Rexnord & Booth-Rouse Equipment Co., supra.
As we understand the real thrust of Campo and arguments based thereon, however, it is that the conduct of Pust, in permitting his hand to become caught in the nip point, constituted either the proximate cause or an "intervening cause" of injury which should relieve Union from strict liability. This argument is unpersuasive. The alleged defects in the conveyor, i.e., the lack of warning, and the absence of guards, were present when it left Union's hands. Arguably, it was foreseeable that someone working at or near the conveyor could be injured by the unprotected nip point which had no warning. Evidence adduced at trial, including testimony of Holly's chief engineer, established that it is widely known in the conveyor manufacturing industry that purchasers often forget or intentionally neglect to install guards. The injury therefore could be found to be foreseeable by Union, see Bexiga v. Havir Manufacturing Corp., supra, and as such the proximate cause issue is one for the jury to resolve.
Furthermore, the particular manner in which one is injured by a defective product need not be foreseeable; all that need be foreseeable is that the defect will lead to injury. In Bradford v. Bendix-Westinghouse Auto Air Brake Co., supra, this court stated:
"`An unreasonably dangerous defect' under Section 402A which is a proximate *363 cause of plaintiff's injuries may result in the imposition of strict liability, even where an intervening cause might not have been `foreseeable' by the defendant."
Finally, Union suggests that since Holly was well aware of the dangers, no further warning was required for the benefit of Holly's employee, Pust. This argument, however, is totally inconsistent with the purposes of strict liabilityto protect the ultimate user from injury. Section 402A, Comment l., provides:
"In order for the rule stated in this Section to apply it is not necessary that the ultimate user or consumer have acquired the product directly from the seller, although the rule applies equally if he does so . . .. It is not even necessary that the consumer have purchased the product at all. He may be a member of the family of the final purchaser, or his employee, . . ."
"`User' includes those who are passively enjoying the benefit of the product . . . as well as those who are utilizing it for the purpose of doing work upon it, as in the case of an employee of the ultimate buyer . . . ."
The knowledge of the employer, Holly, is therefore irrelevant with regard to Pust's claim against Union. See Canifax v. Hercules Powder Co., 237 Cal.App.2d 44, 46 Cal.Rptr. 552 (1965); Crane v. Sears, Roebuck & Co., 218 Cal.App.2d 855, 32 Cal.Rptr. 754 (1963); Berkebile v. Brantly Helicopter Corp., supra.
The conveyor as shipped without a warning as to the danger of an unguarded nip point, could be found by the jury to have been defective under § 402A, and a proximate cause of Pust's injury. Thus it was error not to submit these issues to the jury.

II. IMPLIED WARRANTY OF MERCHANTABILITY
In view of our disposition of the strict liability issues, it necessarily follows that the conveyor, as manufactured and delivered, could be found to be unfit for the purposes for which it was sold. Section 4-2-314, C.R.S. 1973. See Hiigel v. General Motors, supra. The conveyor, therefore, if determined by a jury to be defective and the proximate cause of Pust's injuries, could consistently be found to have been unmerchantable. This issue, too, should have been submitted, as an alternate basis for recovery, for determination by the jury.
Union argues that the trial court was correct in dismissing the warranty claim on the basis of lack of privity between Pust and Union. However, § 4-2-318, C.R.S. 1973, provides:
"A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section."
Privity, therefore, is not required in such actions. See Hiigel v. General Motors Corp., supra; Gonzales v. Safeway Stores, Inc., 147 Colo. 358, 363 P.2d 667 (1961); Bradford v. Bendix-Westinghouse Auto Air Brake Co., supra.

III. EVIDENTIARY RULINGS
Union, in its cross-appeal, first alleges that the court erred in excluding evidence regarding plaintiff's malpractice action against Pust's physician, the settlement of that claim, and its subsequent dismissal with prejudice. We disagree.
Restatement (Second) of Torts § 457, states the general rule:
"If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner."
In Powell v. Brady, 30 Colo.App. 406, 496 P.2d 328 (1972), this court expressly approved *364 the rule as stated in § 457. See also Denver & Rio Grande Western R.R. v. Conley, 293 F.2d 612 (10th Cir. 1961). See generally Annot., 100 A.L.R.2d 808, and cases cited therein. Thus, even if negligence on the part of Pust's treating physician had been shown, this would not relieve Union from liability. Therefore, the trial court properly excluded evidence concerning the physician's negligence in treating Pust, as well as the settlement and dismissal of the malpractice suit stemming from the physician's conduct.
Union nevertheless submits that Powell v. Brady, supra, is distinguishable from the instant case because under Fisher v. Denver National Bank, 22 Colo. 373, 45 P. 440 (1896), prior pleadings of a party are admissible against that party in a subsequent action. The basis of that decision is that the pleadings in question constituted a prior inconsistent statement. It is asserted that the position taken by Pust in the malpractice action and that taken subsequently against Union are inconsistent and therefore the prior pleadings should be admitted in the present action for impeachment purposes. In this connection, Union argues that if the negligence of the doctor was the cause of Pust's amputation (which the former pleadings allegedly demonstrate) it cannot now consistently be asserted that Union's acts caused the injury. We do not agree.
Pust's pleadings allege that Union's actions were the initial cause of his injury. As we have already noted, if Union's acts were the initial cause of the injury Pust may recover from Union for the subsequent negligence of the doctor. Powell v. Brady, supra. Surely it cannot be asserted that the doctor was the cause of the conveyor accident. There is no inconsistency in the two pleadings and application of the Fisher rule is therefore not warranted. Indeed, the pleadings in the former suit as well as the settlement and dismissal are both irrelevant and prejudicial to the instant action.
The thrust of this contention is that not to permit the jury to learn of the malpractice suit and the $67,000 settlement thereof could lead to double recovery if an award of damages were obtained against Union. That contention, however, is without vitality here, since in its pleadings, Union requested, and Pust stipulated to, a set-off for the $67,000 received by Pust from the physician.
Union also asserts that the trial court erred in admitting into evidence the safety codes relating to conveyors. This contention is based on the belief that:
(1) Safety codes indicate a standard of care and since this is not a negligence case, standards of care are irrelevant, and
(2) The majority rule prohibits as hearsay the admissibility of safety codes and standards which do not have the force of law.
As they relate to the instant case, these safety codes are highly relevant to the defect issue, see Price v. Buckingham Mfg. Co., Inc., 110 N.J.Super. 462, 266 A.2d 140 (1970), as well as to the issue of foreseeability. The codes demonstrate, as did the testimony, the feasibility and effectiveness of installing conveyor belt guards for the prevention of injury. Evidence of this nature is fully relevant in 402A cases, if for no other reason than to demonstrate that the challenged article is not an "unavoidably unsafe product." See § 402A, Comment k.
Nor are these codes objectionable as hearsay evidence, because the expert through whom they were admitted participated in their formulation. While without his presence these codes might be within the traditional hearsay exclusion of learned treatises, here they should be admitted. See McComish v. DeSoi, 42 N.J. 274, 200 A.2d 116 (1964); Nordstrom v. White Metal Rolling & Stamping Corp., 75 Wash.2d 629, 453 P.2d 619 (1969); Fed. Rules of Evidence § 803(18). See also 1 L. Frumer & M. Friedman, Products Liability § 5:04; Comment, Admissibility of Safety Codes Rules and Standards in Negligence Cases, 37 Tenn. L. Rev. 581 (1970). For a cogent and well reasoned analysis of the reasons for admitting such codes, see 4 J. Weinstein & M. Berger, Weinstein's Evidence 803-50.
*365 In McComish v. DeSoi, supra, the court stated:
"In this case, however, the manuals were not received as learned treatises. They were introduced as safety codes, as objective standards of safe construction, generally recognized and accepted as such in the type of construction industry involved. A treatise is usually no more than one expert's opinion regarding a particular factual complex. On the other hand, a safety code ordinarily represents a consensus of opinion carrying the approval of a significant segment of an industry. Such a code is not introduced as substantive law, as proof of regulations or absolute standards having the force of law or of scientific truth. It is offered in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, and as such it provides support for the opinion of the expert concerning the proper standard of care."
Similarly, here the safety codes were not received as learned treatise but only as support for the expert's testimony. We hold, therefore, that the safety codes are relevant and competent evidence in this case. Cf. City and County of Denver v. DeLong, Colo., 545 P.2d 154 (1976). (Admissibility of employer safety codes).

IV. CHOICE OF LAW
Finally, while no issue is raised concerning application of Colorado law on the first party claim[2], Union asserts that the trial court erred in applying Colorado law as a basis for dismissing its third-party complaint against Holly. Union contends that, under the principles of conflicts of law, Montana law, which would countenance its claims for indemnity against Holly, must be applied rather than Colorado law under which the Workmen's Compensation statute arguably would bar recovery. Section 8-42-102, C.R.S. 1973; Hilzer v. MacDonald, 169 Colo. 230, 454 P.2d 928 (1969). We hold that Montana law should be applied.
Opting for predictability over an ad hoc determination of conflicts issues, the Colorado Supreme Court in First National Bank v. Rostek, 182 Colo. 437, 514 P.2d 314 (1973), adopted the "most significant relationship" analytical framework of the Restatement (Second) Conflict of Laws § 145 for multistate tort controversies. That section provides:
"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered."
There mere fact that the mathematically greater number of these contacts occurs in one state as opposed to another, is not determinative of which state's law should be applied. Sabell v. Pacific Intermountain Express Co., 36 Colo.App. 60, 536 P.2d 1160 (1975); and Restatement § 145, Comments.
Here, the place of the injury was Montana. This contact bears significantly on the relationship of the parties particularly where the occurrence of the injury in that state is not merely fortuitous. See First National Bank v. Rostek, supra; Restatement § 145, Comment e. If Union failed to install guards or supply warning, then any foreseeable injury would occur in *366 Holly's plant in Montana. See Restatement § 145, Comment e.
Similarly, if, as Union contends, Holly was to have installed the guards or supplied a warning, then the place where the conduct causing the injury occurred was Montana. In Restatement § 145, Comment e., it is stated:
"When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law . . ."
Regarding the test in Restatement § 145(2)(c) above, Holly, a New York corporation has its principal place of business in Colorado and Union, a Colorado corporation, conducts its operations here. However, the Restatement relegates this contact to relative insignificance where the interest affected is other than a personal one such as an individual's interest in his reputation or right of privacy. See Restatement § 145, Comment e.
Finally, the place where the relationship is centered must be considered. Arguably this is Colorado. However, the Restatement indicates that this contact is of particular importance only when (a), (b), and (c) of § 145 are also in that state.
There is additional reason to apply Montana law. A number of well-reasoned opinions have held that the most significant contact in such cases is the fact that compensation was paid pursuant to the Workmen's Compensation Act of a particular state. See, e.g., Goodemote v. Mushroom Transportation Co., Inc., 427 F.2d 285 (3d Cir. 1970); Madrin v. Wareham, 344 F.Supp. 166 (W.D.Pa.1972); Haynes v. Atlantic Richfield Co., 325 F.Supp. 1308 (E.D.Pa.1971); Elston v. Industrial Lift Truck Co., 420 Pa. 97, 216 A.2d 318 (1966); and Kabak v. Thor Power Tool Co., 106 Ill.App.2d 190, 245 N.E.2d 596 (1969). Here, compensation was paid to Pust under the Montana Workmen's Compensation law, thus, Montana is the state whose Workmen's Compensation program is most significantly involved and consequently the state with the most significant interest in the application of its policies to the instant dispute. Elston v. Industrial Lift Truck Co., supra. Application of the Colorado Workmen's Compensation Act would be illogical where, as here, Holly is not subject to the Colorado Workmen's Compensation Act at its Montana plant.
We therefore hold that Montana law is applicable to Union's third-party action against Holly. Having made such determination we look to the Montana courts' construction of that state's Workmen's Compensation Act to determine whether Union's suit was properly dismissed.
In DeShaw v. Johnson, 155 Mont. 355, 472 P.2d 298 (1970), the Montana Supreme Court held that the fact that an employer had paid an employee for injuries pursuant to the Montana Workmen's Compensation Act, did not preclude a third party, also liable to that employee, from recovery in indemnity against the employer.
In so holding, the court construed §§ 92-203 and 92-204, R.C.M. 1947 of the Montana Workmen's Compensation Act, which are nearly identical in thrust and seemingly as all encompassing as the Colorado counterpart, § 8-42-102, C.R.S. 1973. The court stated:
"Section 92-203 provides that an employer who pays under the Act shall not be `subject to any other liability whatsoever for the death of or personal injury to any employee' and all `causes of action . . . for and on account of such death of, or personal injury to, any such employee are hereby abolished'. Section 92-204 provides that `the provisions of this act shall be exclusive' and that action to recover damages for injuries sustained by an employee other than the compensation provided shall be available to any employee or to `all persons having any right or claim to compensation for his injury or death . . . ."
In holding as it did the Montana court noted that to do so would seemingly compel the employer to do indirectly what he is exempt from doing directly. Commenting *367 on the employer's liability to third persons, the broad language of the statute notwithstanding, the court reasoned:
"[T]he immunity conferred is only against actions for damages on account of the employee's injury; a third-party's action for indemnity is not exactly for `damages' but for reimbursement, and it is not `on account of the employee's injury, but on account of breach of an independent duty owed by the employer to the third party." (Quoting from 2 A. Larson, Workmen's Compensation Law § 76.30, p. 235).
As to the statute's further restriction that the election to pay Workmen's Compensation benefits shall bind "all persons" the court reasoned that the Montana legislature had in mind those persons:
"[W]ho might attempt to recover through some relationship with the injured party, and not anyone such as a third-party plaintiff in the instant case, who seeks to recover on an obligation separate and apart from that owing to the injured employee."
The holding in DeShaw is thus clear and the reasoning persuasive.
Consequently, the trial court erred in dismissing Union's third-party action against Holly for indemnity.
We have considered the other contentions of error of the parties and find them to be either without merit, or encompassed within our holdings above.
The judgments dismissing Pust's claim against Union and Union's against Holly are reversed and the cause remanded for a new trial.
BERMAN and KELLY, JJ., concur.
NOTES
[1] Holly also appeals alleging that the dismissal of the third-party complaint either should have been with prejudice or in the form of a summary judgment.
[2] Montana also has adopted Restatement (Second) of Torts § 402A. Brandenburger v. Toyota Motor Sales, U.S.A., Inc., 162 Mont. 506, 513 P.2d 268 (1973).