536 P.2d 1160 (1975)
Michael J. SABELL, Plaintiff-Appellant,
v.
PACIFIC INTERMOUNTAIN EXPRESS CO., a corporation, and BN Transport, Inc., a corporation, Defendants-Appellees.
No. 74-377.
Colorado Court of Appeals, Div. III.
April 22, 1975.
Rehearing Denied May 13, 1975.
Certiorari Denied July 14, 1975.
*1162 John H. Williamson, Denver, for plaintiff-appellant.
Dosh, DeMoulin, Anderson & Campbell, William P. DeMoulin, Denver, for defendant-appellee, BN Transport, Inc.
Yegge, Hall & Evans, Eugene O. Daniels, Denver, for defendant-appellee, Pacific Intermountain Express Co.
Selected for Official Publication.
SMITH, Judge.
This is a negligence action wherein plaintiff, Michael J. Sabell, a Colorado resident, seeks to recover damages for bodily injuries and property damage sustained as the result of a motor vehicle accident which occurred in Iowa. Plaintiff alleges that the accident was caused by the negligence of defendants Pacific Intermountain Express, Co. (P.I.E.) and BN Transport, Inc. Both corporations are resident and authorized to do business in Colorado. A jury trial was held and following the close of plaintiff's case, the trial court granted the motion of both defendants for directed verdicts of dismissal. We affirm the dismissal of BN Transport and reverse the order dismissing the case as to P.I.E.
On the morning of the accident, a semitrailer truck owned and operated by BN Transport slid on an icy portion of the westbound lanes of U.S. Interstate Highway 80 west of Des Moines, Iowa, and overturned, injuring the driver, and subsequently coming to rest in a field some 200 feet north of the edge of the roadway. The condition of the highway was slightly wet but otherwise clear except for an isolated patch of "black ice" (wet ice which cannot be seen upon approach), and visibility was in no way impaired. Shortly thereafter a semi-trailer truck owned and operated by P.I.E. stopped to assist the BN Transport driver. There is no dispute that it is common practice for truckers to stop and assist one another in this type of situation. The P.I.E. driver parked his vehicle with the tractor and trailer off the roadway, with the exception of the left rear corner of the trailer which extended approximately one foot onto the traveled portion of the highway. The driver of the P. I.E. vehicle set out warning flares behind his truck for a distance of approximately 30 yards.
As westbound plaintiff reached the top of a long hill in this land of gently rolling terrain, he observed the P.I.E. truck approximately one mile ahead along the right side of the highway. He shifted gears, slowing down his semi-trailer truck until he was proceeding at a speed of approximately 30 miles per hour. An automobile was proceeding in the same direction 300 to 400 feet ahead of plaintiff. As the automobile came to a point approximately next to the P.I.E. truck, it encountered the "black ice" and started to "fishtail," crossing the intermittent white lines separating the two westbound lanes. Although plaintiff at that time was not aware of the "black ice," the actions of the car ahead caused him to apply his air brakes very gently. At the same time he looked into his right-hand rear view mirror and observed his trailer starting to slide to the right because of the slope of the roadway. In order to correct this sliding, plaintiff *1163 pressed on his accelerator. This resulted in the tractor portion of his rig jackknifing to the right in front of the trailer. The momentum of plaintiff's vehicle caused it to slide along the highway in this position until the left front portion of the tractor of the truck collided with the extreme left rear portion of the P.I.E. trailer which was projecting approximately one foot into the right-hand westbound lane.
The evidence disclosed that there was at least 27 feet of unobstructed westbound highway surface between the parked P.I.E. truck and left-hand shoulder of the roadway. This would have allowed plaintiff safe passage past the P.I.E. vehicle had there not been the black ice on the road. Plaintiff testified that since he was unable to stop and because the car in front of him was straddling the middle of the highway, he was unable to pass between the automobile and anything on the shoulder. Plaintiff admitted that he did not observe the BN Transport truck in the field prior to the collision.
The trial court ruled, as a matter of law, that defendants P.I.E. and BN Transport were not guilty of any negligence, and that even if the P.I.E. vehicle extended one foot onto the highway, this was not the proximate cause of the accident. The court concluded that plaintiff's own negligent acts were the primary cause of the accident and thereupon, at the conclusion of plaintiff's case, dismissed the action.
The facts in this case and the arguments of counsel give rise to two "choice of law" problems: (1) In the determination of whether the conduct of the parties in operating their motor vehicles was negligent in the first instance, should the laws of Iowa or Colorado be applied? (2) If negligence is found to have occurred on the part of one or more of the parties, should the comparative negligence law of Colorado (§ 13-21-111, C.R.S. 1973) or the contributory negligence doctrine of Iowa determine plaintiff's right to recovery and the amount of damages, if any?
In First National Bank v. Rostek, Colo., 514 P.2d 314, the Colorado Supreme Court abandoned the doctrine of lex locus delicti as determinative in the application of various statutes and rules in multistate tort controversies, and took an important step forward by adopting the "significant contacts" choice of law rule. See 1 Restatement (Second) of Conflict of Laws § 145 (1969) (hereinafter the Restatement). The court, in Rostek, indicated a preference for more specific choice of law rules in multistate tort controversies, and, in accordance with that mandate, we apply the specific choice of tort law principles in Restatement § 157 in ascertaining whether Iowa's traffic regulations will apply in determining the standard of care and apply § 164 of the Restatement in determining whether Colorado's comparative negligence statute is applicable in ascertaining whether neglignce on the part of plaintiff precludes his recovery in whole or in part. The proper application of both § 157 and § 164 requires, however, the systematic anal ysis of § 6 of the Restatement to determine the relative importance of the "significant contacts" in § 145.[1]
In Restatement § 145(2), the significant contacts are enumerated which must be considered in choosing which state's law should be applicable:
"(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) The domicil, residence, nationality, place of incorporation and place of business of the parties, and
*1164 (d) the place where the relationship, if any, between the parties is centered."
The mere fact that the mathematically greater number of these contacts relate to one statement to the other, however, is not the sole, or even the prime, determinant. Each contact must be evaluated and assigned a relative degree of importance with respect to the particular rule of law at issue. See Restatement § 145, comments.
Section 145 requires that in making such an evaluation and in assigning a relative importance to each significant contact, the various factors listed in § 6 of the Restatement must be analyzed. Those factors are:
"(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainly, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied."
These policy considerations vary in importance and in application depending upon the field of law and the particular issue under consideration. See Heath v. Zellmer, 35 Wis.2d 578, 151 N.W.2d 664. As to the questions at issue here, the needs of the interstate and international systems are not of great significance. Neither state will be substantially affected by what the other state does, and interstate automobile and transport movement will not be hindered, or particularly influenced, by the choice of law rules we adopt here. Predictability of result and protection of justified expectations are important considerations in transactions of a consensual nature, but are of minor importance in the instant case because they are not generally factors considered by people prior to their utilization of the highways or their involvement in automobile accidents.
As to the consideration of ease in determination and application of law, little significance attaches because the law of either state is simple and easy to apply. Also, it appears that no basic policies underlying the field of negligence law will be substantially affected by our choice of law decisions in the instant case.
Hence, in the case at issue, the remaining two policy factors listed in § 6(b) and (c) of the Restatement assume primary importance in isolating which of the contacts enumerated in § 145 are crucial to the resolution of both "choice of law" questions presented. See Mitchell v. Craft, 211 So. 2d 509 (Miss.). See also Decker v. Fox River Tractor Co., 324 F.Supp. 1089 (E.D. Wis.), and Frummer v. Hilton Hotels International, Inc., 60 Misc.2d 840, 304 N.Y. S.2d 335.

Standard of Care
The interest of a state in having its negligence rules applied in the resolution of a particular issue will depend upon the policy sought to be achieved by that rule and by the relation of the state to the occurrence and the parties. Utilizing the policy factors in § 6(b) and (c) of the Restatement, we recognize that the state of residence of the parties, or the state where their relationship is centered does not have any significant interest in regulating the standard of care used by motorists on the highways of other states.[2] On the other hand, the state in which the motor vehicle collision and the conduct which caused such collision occurs has an overriding interest in regulating the minimum standards *1165 of acceptable conduct by motorists using its roads. Thus, we conclude that under § 145 the contacts of (1) the place where the injury occurred, and (2) the place where the conduct causing the injury occurred, are of primary importance and assume greater weight than the two remaining contacts in a determination of the law regulating standard of conduct in negligence cases. Hence, here, where the injury occurred in Iowa and where the conduct which caused the injury also occurred there, that state's law should apply with respect to the issues involving the standard of care to be imposed upon drivers operating vehicles upon its roads and highways.
Admittedly defendant P.I.E. violated Iowa Code Annotated § 321.354, which provides in pertinent part that no standing vehicle shall be left upon the paved or improved or main traveled part of a highway. Violation of this statute constitutes negligence per se in Iowa. See Cunningham v. Court, 248 Iowa 654, 82 N.W.2d 292.
Plaintiff introduced exhibits which showed that the left rear corner of the P. I.E. trailer which extended onto the highway was the portion of that vehicle with which plaintiff's tractor cab collided. P.I. E.'s violation of the statute was negligence per se under the law of Iowa, and viewing the facts in a light most favorable to plaintiff, a reasonable inference could be drawn that defendant P.I.E.'s negligence in so parking its trailer was a proximate cause of plaintiff's injuries. Thus, the issue of the negligence of P.I.E. should have been submitted to the jury for its determination. Johnson v. Baker, 254 Iowa 1077, 120 N. W.2d 502.

Comparative Negligence
Since we have determined that there was sufficient evidence of P.I.E.'s negligence to require that this issue should be submitted to a jury, we now turn to the question of whether the negligence of plaintiff, assuming, arguendo, that the trial court had the right to take that question from the jury, is a bar to his recovery as a matter of law as it would be under the contributory negligence doctrine followed in Iowa.
Although there are no Colorado cases holding that the comparative negligence statute (§ 13-21-111, C.R.S.1973) is applicable to accidents occurring outside of the state of Colorado, neither are there any requiring us to follow the public policy of another state in determining the relative quanta of negligent conduct between the parties as it relates to the recovery of damages.
In Rostek, supra, the supreme court determined that South Dakota, where the injuries and the conduct causing the injuries occurred, did not have contacts which were as significant to the specific guest-host problems presented, as those of Colorado, where the parties resided. The court concluded that South Dakota's only interest in this particular aspect of the lawsuit was the fortuitous occurrence of the accident within its borders. In the instant case, the comparative negligence statute is analogous to the guest statute because both define the quanta of negligence necessary to impose or limit generally the liability of the parties.[3]
The manner in which one citizen may seek redress from another and the rules under which such disputes are resolved are evolved by a state to aid in the resolution of private differences between its citizens or its citizens and those of other states. The relationship the parties have with a particular state has the greatest effect upon which of such rules of recovery should apply. In distinction, rules regulating conduct, as an exercise of the police power, are designed to protect the *1166 public in general from acts committed within the state which represent a danger to the public health, safety and welfare. Thus "rules of conduct" are more closely related to the state where the conduct occurs while "rules of recovery" relate more clearly to the state with which a party is identified. See Mitchell v. Craft, supra.
More specifically, in applying the relevant factors in § 6(b) and (c) enumerated above, we analyze and weigh the following policies and policy interests: First, unlike Iowa, Colorado has adopted the basic policy that the harsh results of the contributory negligence doctrine should be abrogated, and that in its stead, the parties' negligence should be carefully measured and compared in first determining liability, and then in ascertaining an award of damages, if any. Second, Colorado, as the state of the forum has a legitimate interest in applying its laws and policies not only to the conduct of its residents, but also to those who seek relief in its courts. Third, the only contact which Iowa has with this accident is that it occurred within its borders. As stated previously, Iowa has a legitimate interest in determining the standard of care to which all motorists upon its roads must adhere; however, its interests in the application of rules which will determine the ultimate issues of the quantum of negligence necessary to authorize or preclude recovery and damages, where one non-resident of Iowa seeks to recover against another non-resident, in a state other than Iowa, although of some significance, are simply not as great as those of Colorado, where the parties reside and where they have sought redress.
Therefore, in applying the particular interests and policies of Colorado to comparative negligence controversies, and in endeavoring to minimize a case-by-case, ad hoc, approach for the solution of comparative negligence conflicts questions, we hold that the specific approach to applying the choice of law rule of § 145 should be that the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered, are to be weighed more heavily and are to be given more importance in such a choice of law determination, than the contacts of the place where the injury occurred, and the place where the conduct causing the injury occurred.
Applying those particular "significant contacts" to the present case, we conclude that Colorado, not Iowa, has the most significant contacts: (1) Plaintiff was domiciled and resided in Colorado; (2) plaintiff's vehicle was registered in Colorado and was operated from a Denver headquarters; (3) the defendants are both residents of and authorized to do business in Colorado; and (4) the defendants were served in Colorado and the case was filed in the district court of Colorado. Accordingly, Colorado's comparative negligence statute is the appropriate law to be applied.
Applying comparative negligence principles to the evidence presented, we hold that a determination of the relative negligence of the plaintiff and defendant P.I.E. presented a factual issue that should have been submitted to the jury. See Powell v. City of Ouray, 32 Colo.App. 44, 507 P.2d 1101.

Liability of BN Transport
We agree with the trial court that, as a matter of law, there was no evidence presented by plaintiff which would entitle him to recover against BN Transport. All parties agreed that the BN truck slid off the highway as a result of a patch of unforeseeable and extremely hazardous "black ice" and that it came to rest on its side some 200 feet from the edge of the highway. There is also no dispute that this occurred a considerable time before plaintiff's truck collided with the P.I.E. truck. Plaintiff was easily able to observe the highway conditions and the P.I.E. truck from at least one mile away, and, admittedly, was not aware of the BN Transport truck until after the collision. In other words, viewing the facts in the light *1167 most favorable to plaintiff, we are compelled to conclude that there are simply no facts in the record which could be construed as establishing that any act or omission on the part of defendant BN Transport could have been a proximate cause of plaintiff's injuries, and that no evidence, or legitimate inference arising therefrom, has been presented upon which a jury's verdict against BN Transport could be sustained. See Klunenberg v. Rottinghaus, 256 Iowa 731, 129 N.W.2d 68.
The judgment is affirmed as to defendant BN Transport, Inc., but reversed as to defendant P.I.E., and the cause is remanded for further proceedings not inconsistent with the views herein expressed.
COYTE and RULAND, JJ., concur.
NOTES
[1] For a complete and scholarly discussion of the relationhip between § 6 and § 145 and analysis of how this approach closely approximates the "governmental interest theory," see Walsh, Heads: Lex Loci Delicti; Tails: Lex Loci DomicileThe Conflict of Laws Coin on EdgeFirst National Bank v. Rostek, 514 P.2d 314 (Colo.1973), 51 Den.L.J. 567.
[2] A more complete discussion of this issue appears in the section entitled Comparative Negligence, infra.
[3] Although Rostek, in applying the rule of Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454, spoke of the standard of care which the host owes to his guest, we interpret this to be a measure of the quantum of negligence which will either preclude or allow recovery. We have used the term "standard of care" as defining whether certain conduct constitutes negligence in the first instance.