Dixie L. BAEDKE, Individually; et al., Plaintiffs,

v.

JOHN MORRELL & CO., a Corporation, Defendant/Third–Party Plaintiff,

v.

PEARSON SERVICES, INC., Third–Party Defendant.

No. C88–3114.

United States District Court, N.D. Iowa, C.D.

Oct. 4, 1990.

Neven J. Mulholland, Thomas J. Bice, Fort Dodge, Iowa, for plaintiffs.

James P. Craig, Larry G. Gutz, Cedar Rapids, Iowa, for defendant/third-party plaintiff.

Dan T. McGrevey, Fort Dodge, Iowa, John B. Grier, Marshalltown, Iowa, for Pearson Services, Inc.

## ORDER

HANSEN, District Judge.

This matter is before the court on defendant John Morrell & Co.'s resisted motion for partial summary judgment, filed March 2, 1990. The motion asks that this court determine whether Iowa or South Dakota law applies to various issues presented in this matter.

### Facts

The facts of this matter are as follows. The parties do not dispute the facts necessary for the resolution of defendant's motion. Defendant John Morrell is a Delaware corporation with its principal place of business in Ohio. John Morrell does business and operates plants in both Iowa and South Dakota, including the John Morrell meat packing plant in Sioux Falls, South Dakota. Plaintiffs and their decedent, Douglas Baedke, are all residents of Iowa. Third-party defendant Pearson Services, Inc. (Pearson) is an Iowa corporation.

Plaintiffs' complaint alleges that in the spring of 1988, defendant hired Pearson to clean out the sewage lines at the Sioux Falls plant. Douglas Baedke was the Pearson employee assigned this job. On April 5, 1988, Mr. Baedke entered the sewage lines in order to clean the lines with a high pressure water hose. Defendant provided Mr. Baedke with a self-contained breathing apparatus. The apparatus failed, and Mr. Baedke was overcome by toxic gases. Mr. Baedke subsequently died as a result of his injuries. Count I of plaintiffs' complaint alleges negligence and gross negligence on the part of defendant and asks for damages for Mr. Baedke's injuries. Count II seeks damages for loss of consortium on behalf of Mr. Baedke's wife, Dixie Baedke. Count III seeks damages for loss of consortium on behalf of Mr. Baedke's minor children, Brandon Baedke, Brian Baedke, and Danielle Baedke.

### Motion for Partial Summary Judgment

Defendant's motion for partial summary judgment asks that this court resolve the question of whether Iowa or South Dakota law applies to several issues presented in this matter. The specific issues involved are: (1) the law governing loss of consortium; (2) the law governing contributory negligence/comparative fault and assumption of risk; and (3) the applicable Wrong-

ful Death Act. The parties argue that there are significant differences in each of these areas between the law of Iowa and the law of South Dakota. Defendant argues that South Dakota law applies to each of these issues. Plaintiffs argue that Iowa law applies to each. No party contends that defendant's motion is an inappropriate vehicle for resolving these issues. This decision by the court is limited to the issues defined by the parties. Additionally, the parties are advised that this ruling is an interlocutory ruling which is subject to change, particularly if the facts as assumed by the parties and this court are not borne out at trial.

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). The court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987).

■ This court must apply the conflicts of laws rules of the forum state, Iowa, in order to determine whether Iowa or South Dakota law governs. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Freeze v. American Home Prod. Corp.*, 839 F.2d 415, 417 (8th Cir.1988). In *Fuerste v. Bemis*, 156 N.W.2d 831 (Iowa 1968), the Supreme Court of Iowa explicitly adopted the "most significant relationship" test of the Restatement (Second) of Conflicts of Laws (1971).[1] *See also Berghammer v. Smith*, 185 N.W.2d 226, 231 (Iowa 1971); *Fabricius v. Horgen*, 257 Iowa 268, 132 N.W.2d 410 (1965). The general principle of this test is that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflicts of Laws § 145(1) (1971) (hereinafter "Restatement"). Contacts which are considered include the place where the injury and the conduct causing the injury occurred, the residence and place of business of the parties, and the place where the relationship between the parties is centered. Restatement § 145(2).

[T]he factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of results, and

(g) ease in the determination and application of the law to be applied.

Restatement § 6.

The Supreme Court of Iowa has not directly spoken on the issues involved in this matter. In a diversity action, the court "must do [its] best to determine what state law is under the state decisions.... [The court] must judicially 'estimate' what the Iowa Supreme Court would do if confronted with the same issue." *Heeney v. Miner*, 421 F.2d 434, 439 (8th Cir.1970).[2]

### *Consortium*

■ Under South Dakota law, a consortium claim is derivative of the main cause of action, and thus the noninjured spouse or minor child's consortium claim may be reduced or barred by the negligence of the injured spouse or parent.

---

**1.** At the time *Fuerste* was decided, the Restatement (Second) was in draft form.

**2.** The court has also considered whether or not to certify this matter to the Supreme Court of Iowa for resolution. *See* Iowa Code § 684A.2; Local Rule 23. However, the court is convinced that its analysis yields the same result as would be arrived at by the Supreme Court of Iowa.

*Barger for Wares v. Cox,* 372 N.W.2d 161, 165 (S.D.1985); *Bitsos v. Red Owl Stores, Inc.,* 350 F.Supp. 850, 852 (D.S.D.1972). The underlying policy of this rule is that allowing a spouse to recover, and enrich the family treasury, when the injured spouse's claim is barred due to his or her own negligence, impermissibly allows the injured spouse to profit by his or her own negligence. *See Ross v. Cuthbert,* 239 Or. 429, 397 P.2d 529, 531–32 (1964) (en banc). Under Iowa law, a consortium claim is not derivative, and the negligence of the injured spouse or parent does not reduce or bar recovery by the noninjured spouse or child under a consortium claim. *Schwennen v. Abell,* 430 N.W.2d 98, 101–02 (Iowa 1988); *Fuller v. Buhrow,* 292 N.W.2d 672, 674–76 (Iowa 1980); *Handeland v. Brown,* 216 N.W.2d 574 (Iowa 1974). The policy underlying this rule is that denying a claim because of the injured spouse's negligence requires the noninjured spouse, who is free from negligence, to bear the burden of damages caused by the negligence of others and permits a negligent tortfeasor to completely escape liability due to the negligence of a third person. *Fuller,* 292 N.W.2d at 676. *See also Schwennen,* 430 N.W.2d at 101. The Supreme Court of Iowa has explicitly rejected the policy expressed in *Ross. Fuller,* 292 N.W.2d at 676; *Handeland,* 216 N.W.2d at 578.

In *Berghammer,* the Supreme Court of Iowa stated the general rule that the law of the marital domicile, as the state with the most significant relationship to the issue, should govern a claim of consortium. *Berghammer,* 185 N.W.2d at 231–233. *See also Brookley v. Ranson,* 376 F.Supp. 195, 198 (N.D.Iowa 1974) (citing *Berghammer* ). *See generally* Annotation, *Conflict of Laws as to Right of Action for Loss of Consortium,* 46 A.L.R.3d 880 (1972).

Defendant quotes the above cited Annotation as follows:

> Whether or not courts which apply the most significant contact theory will apply the law of the place where the injury occurred appears to depend upon whether the place of occurrence was a mere

fortuity. It appears that a court using this approach will apply the law of the marital domicil instead of the law of the place of the wrong, unless the latter jurisdiction has some further significant connection with the facts being litigated, so that where the forum state's only connection with a cause of action for loss of consortium was the fact that the automobile accident which resulted in the injury occurred there, it was held that the law of the marital domicil would control the availability of the action. [citing *Berghammer* ].... A closer question is presented where the place of occurrence is more than a mere fortuity, and, indeed, it has been held that where the spouse was injured while a business invitee on defendant's property, the jurisdiction of the place of the injury had a more significant contact with the case than did the law of the place of marital domicil. [citing *Casey v. Manson Constr. & Eng'g Co.,* 247 Or. 274, 428 P.2d 898 (1967) (en banc) ].

Defendant's brief, filed April 2, 1990, at 15 (quoting Annotation, *Conflict of Laws as to Right of Action for Loss of Consortium,* 46 A.L.R.3d at 883).

*Berghammer* involved an Iowa lawsuit by a Minnesota plaintiff against an Illinois defendant arising from an automobile accident occurring in Iowa. *Berghammer,* 185 N.W.2d at 231. "In *Berghammer,* [the Supreme Court of Iowa] declined to apply [Iowa] substantive law on the issue of consortium because [the court] recognized that Iowa had limited interest in a case in which neither party was a resident." *Cameron v. Hardisty,* 407 N.W.2d 595, 597 (Iowa 1987). This court has found no case in which the Supreme Court of Iowa has faced a factual scenario similar to the facts presented in this matter.

*Casey v. Manson Construction and Engineering Co.,* 247 Or. 274, 428 P.2d 898 (1967) (en banc), involved facts similar to the facts of this case. In *Casey,* plaintiff and her husband were citizens of Oregon. Defendants were Washington corporations licensed to conduct business in Oregon. The injury occurred at a dam construction

project in Washington. Plaintiff's spouse was a business invitee on defendants' construction site. Plaintiff sued defendants for the loss of her husband's consortium. Oregon law provided for a cause of action for consortium. Washington law did not. *Id.* 428 P.2d at 899. The only difference between the facts of *Casey* and this matter is that defendant John Morrell is not incorporated in South Dakota, like the defendants in *Casey* were incorporated in Washington. However, John Morrell does conduct a substantial amount of business in South Dakota. The court does not find this distinction to be dispositive. Section 145 allows consideration of the "place of business" of the parties. The court does not construe this language to be solely limited to defendant's principal place of business. The remaining facts of *Casey* are quite similar to the facts of this matter.

The *Casey* court discussed Oregon's old "lex loci delicti" rule and determined that that rule should be abandoned in favor of the "most significant relationship" test of the Restatement. *Casey*, 428 P.2d at 904–05. The court first noted that, since plaintiff's spouse was a business invitee, the place of the injury was not "fortuitous." *Id.* at 905. So it is in this case, where plaintiffs' decedent was a business invitee of defendant, and thus his presence at defendant's South Dakota plant was more than fortuitous. In discussing the fact that the defendants also did business in Oregon, the court noted that the defendants' activities in Oregon were not related to the subject matter of the lawsuit. *Id.* The same can be said of defendant's activities in Iowa in this case. In discussing the relevant policies of Oregon and Washington, the court first stated that the Oregon legislature had abandoned the anachronistic rule of prohibiting recovery for loss of consortium and adopted the policy that a

spouse's loss of consortium should not go uncompensated. *Id.* at 905–06. With regard to Washington's interest, the court stated, "Washington, of course, has no concern with whether an Oregon wife recovers for loss of consortium in an Oregon court, but Washington has a legitimate concern in whether she recovers against Washington residents when the wrong giving rise to the action occurs in Washington." *Id.* at 906. Further, "Washington has a legitimate concern with whether her residents engaged in [activities there] should be disappointed in their reasonable expectation that the extent of their liability for negligent conduct in Washington be governed by the law of that state, regardless of the domicile of an injured plaintiff." *Id. See also id.* at 908 (Holman, J. concurring).[3] One of the considerations set forth in § 6 of the Restatement is "the protection of justified expectations." Restatement, § 6(d). *Casey* held that Washington had the most significant relationship to the issue and that, therefore, Washington law should govern. *Id.* at 907. Thus, no consortium claim was allowed.

This court must determine whether the Supreme Court of Iowa would follow the reasoning of *Casey*. In *Berghammer*, the Supreme Court of Iowa cited to *Casey*, stating that "Oregon, too, has employed the rule ["that matters which depend on the marital relationship for their solution should [generally] be decided by the law of the husband-wife domicile"] in a consortium case, although denying recovery under the particular facts of the case because the place of marital domicile was held not the state of most significant relationship." *Berghammer*, 185 N.W.2d at 232. The *Berghammer* court did not specifically approve or disapprove of *Casey*. This court finds *Casey* persuasive and believes that the Supreme Court of Iowa would adopt

---

3. If Washington law is not applied, "Washington citizens carrying on activities in Washington would have to lift their financial protection to an unaccustomed level and one which would be dependent upon the locality from which the injured party might come. Theoretically, citizens of Washington could be subjected to 49 different levels of responsibility for acts done within their state of residence, and this seems to me highly undesirable. It seems more reasonable that under the present circumstances 'by entering the state or nation, the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created.'" *Casey*, 428 P.2d at 908 (Holman, J. concurring) (quoting Cavers, *The Choice-of-Law Process*, (1965), at 147).

the reasoning and result of *Casey*. In discussing the lack of Iowa's contacts in *Berghammer*, the court stated that "[n]o party is an Iowa resident." *Berghammer*, 185 N.W.2d at 231. The sole connection of the parties in *Berghammer* to Iowa was the fact that their automobiles happened to collide within Iowa's borders. In this matter, defendant does a substantial amount of business in South Dakota, and this action directly arises out of defendant's South Dakota business activities. South Dakota's contacts with this action are much more substantial than Iowa's contacts in *Berghammer*. The Supreme Court of Iowa's decision in *Cameron* suggests that a state has an interest when one of the parties resides in that state. *See Cameron*, 407 N.W.2d at 597. *Berghammer* and *Cameron* suggests that the Supreme Court of Iowa, given the greater interests of South Dakota in this action versus the interests of Iowa in *Berghammer*, would adopt the analysis of *Casey*. The court finds that South Dakota law should govern the issue of consortium.

### Negligence/Fault

■ The two specific issues involved in this area are the doctrines of comparative fault/contributory negligence and assumption of risk. Under Iowa law, comparative fault is governed by Iowa Code Chapter 668. Generally, a plaintiff's fault will not bar his recovery unless he "bears a greater percentage of fault than the combined percentage of fault attributed to the defendants' third-party defendants and persons who have been released." Iowa Code § 668.3(1) (1987). South Dakota law provides:

> In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

S.D. Codified Laws Ann. § 20–9–2 (1989). *See also Lovell v. Oahe Elec. Co-op.*, 382 N.W.2d 396, 399 (S.D.1986); *Urban v. Wait's Supermarket, Inc.*, 294 N.W.2d 793, 796 (S.D.1980).

The second distinction is that under Iowa law, "assumption of risk" is considered a part of "fault." Iowa Code § 668.1(1). Under South Dakota law, "assumption of risk" is a defense separate and apart from contributory negligence. *See Ballard v. Happy Jack's Supper Club*, 425 N.W.2d 385, 389 (S.D.1988).

Section 164 of the Restatement provides that the law selected by the application of § 145 "determines whether contributory fault on the part of the plaintiff precludes his recovery in whole or in part." Section 165 of the Restatement provides that the law selected by § 145 "determines whether assumption of risk on the part of the plaintiff precludes his recovery." Both sections create the presumption that "[t]he applicable law will usually be the local law of the state where the injury occurred." Restatement §§ 164(2), 165(2).

The parties' briefs do not discuss § 164 or § 165 and the presumption created in those sections that the law of South Dakota, as the place where the injury occurred, would apply to these issues. The parties dispute whether or not contributory negligence/comparative fault and assumption of risk are rules of conduct or rules of recovery. Plaintiffs assert that these rules are rules of recovery. "Doug Baedke did expect to be governed by the laws of South Dakota *with respect to whether or not his conduct constituted negligence* . . . . This case, on the other hand, involves the issue of which rule of recovery, Iowa's comparative fault or South Dakota's contributory fault, should be applied to determine what is the *effect* of the parties' negligence." Plaintiffs' brief in support of resistance, filed April 16, 1990, at 4. Plaintiffs rely on *Sabell v. Pacific Intermountain Express Co.*, 36 Colo.App. 60, 536 P.2d 1160 (1975), for their rule of recovery/rule of conduct distinction. The *Sabell* court stated that " 'rules of conduct' are more closely related to the state where the conduct occurs while

'rules of recovery' relate more clearly to the state with which a party is identified." *Sabell*, 36 Colo.App. 60, 536 P.2d at 1166.

*Sabell* involved an Iowa automobile accident between residents of Colorado.[4] The court held that in comparative negligence controversies,

> the specific approach to applying the choice of law rule of § 145 should be that the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered, are to be weighed more heavily and are to be given more importance in such a choice of law determination, than the contacts of the place where the injury occurred, and the place where the conduct causing the injury occurred.

*Sabell*, 536 P.2d at 1166. The court outlined the policies of Iowa and Colorado as follows. First, Colorado had an interest in avoiding the application of the harsh Iowa rule of contributory negligence to its citizens.[5] *Sabell*, 536 P.2d at 1166. Iowa has a similar interest here, in that the application of the South Dakota rule to plaintiffs leads to a greater likelihood that their recovery will be completely barred. Second, Colorado, as the forum state, had an interest in applying its laws and policies to those who seek relief in its courts. *Id.* This court does not place great weight on this interest, as it is the plaintiff who chose the Iowa forum—a choice over which defendant had no control. While the forum is a factor which is considered, this court believes that choice of law should not depend on plaintiff's choice of forum. The court also notes that § 145 of the Restatement does not list the "forum" as a contact to be considered, although § 6 does allow consideration of "the relevant policies of the forum." Restatement § 6(2)(b). Third, the only contact Iowa had with the accident in *Sabell* is that it occurred in Iowa. *Id.* Thus, Iowa's role as the place of injury was merely "fortuitous." No party in *Sabell* had any relationship to Iowa. South Dakota's contact with this case is more substantial. Here, plaintiff was specifically hired to perform a service in South Dakota, and, consequently, the fact that the accident occurred in South Dakota is more than "fortuitous." The *Sabell* court found that Colorado had the "most significant relationship" to the issue of contributory negligence and that Colorado law should apply, because "(1) Plaintiff was domiciled and resided in Colorado; (2) plaintiff's vehicle was registered in Colorado and was operated from a Denver headquarters; (3) the defendants are both residents of and authorized to do business in Colorado; and (4) the defendants were served in Colorado and the case was filed in the district court of Colorado." *Sabell*, 536 P.2d at 1166. The overriding factor in *Sabell* is that all the parties were Colorado residents, and none were Iowa residents. Such is not the case here. The court finds that *Sabell* is distinguishable and further finds *Sabell* to be unpersuasive.

Defendant and the Restatement view contributory negligence/comparative fault as a rule of conduct. *See* Restatement § 164, comment (b) ("In the great majority of cases, the plaintiff's conduct, which is claimed to constitute contributory fault, will have taken place in the state where he suffered injury. If so, the local law of this state will usually be applied to determine whether the plaintiff's conduct amounted to contributory fault, and if so, whether the effect of this fault is to preclude recovery by the plaintiff in whole or in part."); Restatement § 165, comment (a) (similar language). The parties both agree that the law of South Dakota should apply to determine whether or not plaintiff's conduct was negligent.

█ The Iowa courts have not explicitly adopted or rejected this rule of recovery/rule of conduct dichotomy. Nor

---

**4.** The *Sabell* court does not discuss the citizenship of the parties. The court only noted that plaintiff, an individual, was a resident of Colorado and that defendants, corporations, were "resident and authorized to do business in Colorado." *Sabell*, 536 P.2d at 1162.

**5.** This rule has subsequently been abrogated. *See Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1982); Iowa Code Chapter 668.

have the Iowa courts explicitly adopted or rejected §§ 164 and 165 of the Restatement. Because the Supreme Court of Iowa generally adopts the positions taken by the Restatement, this court believes that the Supreme Court of Iowa would adopt the presumption of §§ 164 and 165 that the place of the injury generally controls, subject to a finding that another state has the most significant relationship to the issue after applying the principles of § 145 and § 6.

The court must first examine the contacts as outlined in § 145 of the Restatement. The place where the injury occurred and the place where the conduct causing the injury occurred are indisputably South Dakota. The plaintiffs and their decedent are Iowa citizens. Defendant is incorporated in Delaware, has its principal place of business in Ohio, and has plants and does business in both Iowa and South Dakota. The relationship between the parties is centered around a contract, apparently executed in Iowa, for services which were to be performed in South Dakota. The court finds that the center of the relationship is South Dakota, the place where the services were performed. *Cf.* Restatement § 196 (validity of contract for rendition of services governed by law of state where services are to be performed, unless some other state has a more significant relationship to the issue).

Plaintiffs' primary argument is that their status as Iowa residents, and the fact that decedent was an Iowa resident, is sufficient to find that Iowa has the most significant relationship to the issues of contributory negligence/comparative fault and assumption of risk because Iowa has the paramount interest in seeing that its residents recover for their injuries. The defendant does not dispute that Iowa has an interest in the recovery of its residents for injuries inflicted upon them. The most significant relationship test "gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with

the outcome of particular litigation." *Fuerste*, 156 N.W.2d at 833.

In reviewing the factors of § 6 of the Restatement, the court finds that the following considerations are the most relevant.

   (b) the relevant policies of the forum,

   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

   (d) the protection of justified expectations,

   . . . .

   (e) the basic policies underlying the particular field of law

Restatement, § 6.

The basic policies underlying contributory negligence/comparative fault are first, defining the quantum of fault on the part of plaintiff which will preclude recovery, and, second, reducing a plaintiff's recovery for any negligence on his or her part which is less than the quantum which completely precludes recovery. The policies underlying assumption of risk are similar. The policy of Iowa, the forum state, is to allow a negligent plaintiff recovery up to the point where his or her percentage of fault exceeds the fault of the others involved. *See* Iowa Code § 668.3(1). The policy of South Dakota, the other potentially interested state, is to preclude recovery if the plaintiff's fault is more than "slight." *See* S.D.Codified Laws Ann. § 20–9–2. The legislatures of each state have drawn the line at a different place.

Iowa has an interest in allowing its citizen plaintiffs to recover for their injuries. South Dakota has a strong interest in regulating conduct within its borders and an interest in the consequences of negligent conduct within its border. The parties do not dispute that South Dakota law should be applied to determine whether or not plaintiffs' decedent was at fault, i.e., whether Mr. Baedke was negligent. South Dakota's contributory negligence policy has the effect of discouraging negligent conduct by potential plaintiffs by informing plaintiffs that if their negligence is more

than slight, the consequence is that their recovery will be barred.

Plaintiffs argue that Iowa's comparative negligence is the "sounder rule of law." Plaintiffs cite to *Fuerste*, 156 N.W.2d at 834, for the proposition that when important interests of two states are involved and when other considerations are in equipoise, a court can apply the "sounder rule of law." Plaintiffs' brief, at 7. In such a case, the court could " 'select the law that most adequately does justice to the parties and has the greatest likelihood of being applicable with justice in the future.' " *Fuerste*, 156 N.W.2d at 834 (quoting *Heath v. Zellmer*, 35 Wis.2d 578, 151 N.W.2d 664, 673 (1967)). However, in this case the interests of the two states are not in equipoise.

For the above reasons and for many of the reasons expressed in this court's discussion of the consortium issue, the court finds that in the areas of contributory negligence/comparative fault and assumption of risk, under the facts of this case, South Dakota is the state with the most significant relationship to these issues. Consequently, the court finds that South Dakota law should be applied to these issues.

### Wrongful Death Acts

This action was originally filed on behalf of Douglas Baedke by Dixie Baedke, his guardian and conservator, and sought damages for Mr. Baedke's injuries in addition to the consortium claims of Mr. Baedke's wife and children. On May 23, 1989, an amended complaint was filed due to the death of Mr. Baedke. The amended complaint converted Count I of the original complaint into an action for wrongful death and continues Mr. Baedke's claims, as presented by Mrs. Baedke as Administrator of his estate, which were originally presented.

Iowa Code § 611.20,[6] Iowa's wrongful death statute, "is a survival statute; it does not create a new cause of action for the deceased's estate, but rather allows the

---

6. "All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Iowa Code

estate to assert a cause of action which the decedent would have had, had he or she survived." *Shook v. Crabb*, 281 N.W.2d 616, 617–18 (Iowa 1979). Under South Dakota law,

> [a]ll causes of action shall survive and be brought, notwithstanding the death of the person entitled or liable to the same. Any such action may be brought by or against the executor or administrator or successors in interest of the deceased.

S.D.Codified Laws Ann. § 15–4–1 (1988). The court notes that the first sentence of this section is essentially identical to Iowa Code § 611.20.

> Whenever the death or injury of a person ... shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured to maintain an action and recover damages in respect thereto, if death had not ensued, then and in every such case, the corporation which, ... would have been liable, if death had not ensued, ... shall be liable, to an action for damages, notwithstanding the death of the person injured ...

S.D.Codified Laws Ann. § 21–5–1 (1988).

The court has read the parties' briefs on this issue. The court is unable to perceive any significant difference between Iowa and South Dakota law on this issue. Consequently, the court will decline to further address this issue at this time and will await further argument from the parties regarding their perceived difference between Iowa and South Dakota law. As trial in this matter is currently set for November 6, 1990, the court will not call for further briefing on this issue prior to trial, unless the parties desire to do so, but will allow the parties an opportunity to further address this issue either immediately prior to or during trial.

### ORDER:

Accordingly, It Is Ordered:

---

§ 611.20. *See also* Iowa Code § 611.22 (regarding substitution of legal representative of the deceased).

709

Defendant's motion for partial summary judgment, filed March 2, 1990, is granted in part and denied in part. In accordance with the discussion in the text above, the court finds that the law of South Dakota should govern the issues of consortium and contributory negligence in this action. The court declines to address at this time which state's law regarding wrongful death should apply. The parties will be allowed, either prior to trial or during trial, an opportunity to further address this latter issue. The parties may, if they so choose, file briefs on this issue prior to trial.

Done and Ordered.