81 F.3d 169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tomuel LEE, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-17066.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 13, 1996.
Decided March 28, 1996.
 
 1
 Before: BOOCHEVER and FERNANDEZ, Circuit Judges, and KELLEHER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 After a bench trial, the district court held that Plaintiff/Appellant Tomuel Lee's (Lee) negligence suit was barred by the discretionary function exception to the Federal Tort Claims Act. 28 U.S.C. § 2680(a). In the alternative, the district court held that Colorado's comparative negligence statute barred any recovery by Lee, because Lee's negligence was greater than that of the United States. Lee challenges both of the district court's holdings and several of the district court's findings of fact. We AFFIRM.
 
 I. BACKGROUND
 
 4
 On September 6, 1990, someone reported an accident had occurred on Mesa Verde Route 10, the entrance road to Mesa Verde National Park (MVNP). Lee's truck had left the roadway and fallen down an embankment. Lee's blood-alcohol content was .178% some time after the accident. The speed limit at the accident site was thirty-five miles per hour. The district court found that the physical evidence supported a finding that the speed of the truck was close to fifty-five miles per hour and that Lee's truck was substantially exceeding the speed limit as it left the pavement. While Lee contends he was trying to avoid two deer on the roadway, the district court found that the physical evidence did not support such a finding.
 
 
 5
 Lee alleged that the United States was at least partially responsible for the accident, because it failed to maintain and replace road embankment delineators at the accident site, install guardrail at the accident site, and implement various safety and sign programs.
 
 DISCUSSION
 
 6
 If the acts or omissions Lee challenges fall within the discretionary function exception to the Federal Tort Claims Act, no subject matter jurisdiction exists. Lesoeur v. United States, 21 F.3d 965, 967 (1994). Because we find Lee's arguments on the merits insubstantial, we choose not to decide the jurisdictional question. See Hoeck v. City of Portland, 57 F.3d 781, 786 (9th Cir.) (as amended), cert. denied, --- U.S. ----, 116 S.Ct. 910, --- L.Ed.2d ---- (1996); Clow v. U.S. Dep't of Housing and Urban Dev., 948 F.2d 614, 616 n. 2 (9th Cir.1991).
 
 A. Choice of Law
 
 7
 Lee contends that the district court erred in determining that Colorado negligence law applied. Under Colorado law, if Lee's negligence exceeds that of the United States, Lee can recover nothing. See Colo.Rev.Stat. § 13-21-111. However, if, as Lee contends, Arizona or New Mexico law applies, Lee's damages would be reduced in proportion to his relative degree of fault. See Ariz.Rev.Stat.Ann. § 12-2505; Scott v. Rizzo, 634 P.2d 1234 (N.M.1981). Whether the district court erred in holding that Colorado law governs the determination of the United States' liability is a question of law we review de novo. See Jenkins v. Whittaker Corp., 785 F.2d 720, 724 (9th Cir.), cert. denied, 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 296 (1986).
 
 
 8
 Under the Federal Tort Claims Act, the United States' liability is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Lee argues that Richards v. United States, 369 U.S. 1, 82 S.Ct. 585 (1962), requires application of the whole law of Colorado, including its choice of law rules.
 
 
 9
 In Richards, the Supreme Court held that the law to be applied is that of the state where the negligent acts took place. Id. at 10, 82 S.Ct. at 591. This includes that forum's choice of law rules. Id. at 11, 82 S.Ct. at 592. The fact that Lee is arguing that omissions took place rather than acts does not detract from the applicability of Richards to this case. See Ducey v. United States, 713 F.2d 504, 508 n. 2 (9th Cir.1983). Since the alleged acts and omissions took place in Denver, Colorado or at MVNP in Colorado, Colorado law and its choice of law rules apply.
 
 
 10
 The United States argues that Colorado's choice of law rules should not apply. The United States points to the part of the Richards opinion that states "where the negligence and the injury ... occur simultaneously and in a single jurisdiction, the law to be applied is clear, and no solution to the meaning of the words 'the law where the act or omission occurred' is required." Richards, 369 U.S. at 9, 82 S.Ct. at 591. However, the United States misconstrues Richards. It relies on a quote from the section of the opinion where the Court was deciding what state's laws applied and not the section where the court decided whether that state's choice of law rules also applied. See id. at 8-9, 82 S.Ct. 590-91.
 
 
 11
 The next issue to be decided is whether Colorado's choice of law rules mandate the application of a different forum's comparative fault law. Colorado has adopted Restatement (Second) of Conflict of Laws § 164 for determination of this issue. Sabell v. Pacific Intermountain Express Co., 536 P.2d 1160, 1163 (Col.Ct.App.1975). At the outset, it is significant to note that section 164 states that "[t]he applicable law will usually be the local law of the state where the injury occurred."
 
 
 12
 Section 164 demands that the application of section 145 determines whether "contributory fault on the part of the plaintiff precludes ... recovery in whole or in part." Section 145(2) enumerates the contacts which must be considered in determining which state "has the most significant relationship to the occurrence and the parties." These contacts are
 
 
 13
 "(a) the place where the injury occurred
 
 
 14
 (b) the place where the conduct causing the injury occurred
 
 
 15
 (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
 
 
 16
 (d) the place where the relationship, if any, between the parties is centered."
 
 
 17
 Restatement (Second) of Conflict of Laws § 145 (1969).
 
 
 18
 The court in Sabell required that in assigning importance to the contacts listed in section 145(2), the factors in section 6 of the Restatement must be analyzed. Sabell, 536 P.2d at 1164. The factors enumerated in section 6 are
 
 
 19
 "(a) the needs of the interstate and international systems,
 
 
 20
 (b) the relevant policies of the forum,
 
 
 21
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 
 
 22
 (d) the protection of justified expectations
 
 
 23
 (e) the basic policies underlying the particular field of law,
 
 
 24
 (f) certainty, predictability and uniformity of result, and
 
 
 25
 (g) ease in the determination and application of the law to be applied."
 
 
 26
 Restatement (Second) of Conflicts of Law § 6 (1969).
 
 
 27
 The court in Sabell held that of the factors in section 6 "the needs of the interstate and international systems" is not a factor of great importance. Sabell, 536 P.2d 1164. In addition, the court considered "[p]redictability of result and protection of justified expectations" to be of minor importance in highway accident cases. Id. Similarly, "ease in determination and application of law" was of little significance because the law of either state is easy to apply. Id. Lastly, the court stated "that no basic policies underlying the field of negligence law will be substantially affected by [the] choice of law provisions in this case." Id.
 
 
 28
 The court in Sabell stated that "the relevant policies of the forum" and "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue" were of primary concern. Id. This led the court to hold that "the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered, are to be weighed more heavily [than the other contacts]."
 
 
 29
 Lee's injury occurred in Colorado. The government's alleged negligence occurred at Mesa Verde National Park (MVNP) in Colorado or in Denver, Colorado. Lee's negligence could be characterized as taking place in four states, however, he drove while intoxicated in Colorado. Moreover, the district court found that Lee was negligent in driving too fast in Colorado. While the district court could not determine where Lee was residing on the day of the accident, Lee lived in Far View Terrace, Colorado during the summer of 1990 while working for Mesa Verde National Park. If his residence changed, that change took place less than a week before the accident. Lastly, the relationship between Lee and the government was centered in Colorado at MVNP.
 
 
 30
 In contrast to the nexus between Colorado and the events surrounding Lee's negligence suit, Lee's domicile is located in Sweetwater, Arizona, on a Navajo Reservation. The vehicle Lee was driving was registered in New Mexico. Additionally, this lawsuit was filed in Arizona and the U.S. Attorney's office was served in Arizona.
 
 
 31
 While the court in Sabell felt that the domicile of the parties was an important factor to be considered, it did not hold that domicile was the only factor of importance. See id. at 1166. Virtually all of the other relevant contacts point to Colorado law as the applicable law. Therefore, we hold that Colorado would choose to apply Colorado law under the facts of this case.
 
 B. Negligence
 
 32
 Under Colorado law, "[c]ontributory negligence shall not bar recovery in any action by any person ... if such negligence was not as great as the negligence of the person against whom recovery is sought...." Colo.Rev.Stat. § 13-21-111. The district court found that Lee's negligence was greater than any negligence of the United States as a ground for dismissing this action. We review this determination under the clearly erroneous standard. United States v. McConney, 728 F.2d 1195, 1204 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 33
 Lee challenges several of the district court's findings of fact. Because they may bear, to some degree, on the relative negligence of both Lee and the United States, we address each of them.
 
 
 34
 Lee argues that the district court erred in finding that the 1956 plans called for placement of timber guideposts to delineate the edge of the paved road and that by 1979 the posts had been replaced with reflective edge striping. He contends that the posts were intended to delineate the edge of the embankment. Consequently, Lee claims that it is clear that paint on the edge of the pavement is not a substitute for the posts.
 
 
 35
 Walter Langlitz, a highway engineer, testified that both delineators and road edge striping "are used to mark the edge of the pavement, the edge of the driving surface that you don't want to [sic] driver to stray beyond." Accordingly, the district court's finding is not clearly erroneous.
 
 
 36
 Lee also contests the district court finding that phase 10(1) of the road rehabilitation project "was limited to resurfacing the road, repainting the center lines and reflective road edge and striping, and drainage improvements...." Lee claims that phase 10(1) also encompassed "removal of turf shoulders, obliteration of an approach road, repair of a fill slope, and construction of a new pullout at station 808 + 00."
 
 
 37
 The 1985 plans for project phase 10(1) support Lee's contentions. However, Mr. Heyder, the superintendent at MVNP, testified that 10(1) only involved resurfacing and drainage improvements. On cross-examination, he did not retreat from this position. Accordingly, the district court's finding was not clearly erroneous.
 
 
 38
 Lee also challenges the district court's finding that "there was no indication that the brakes were applied or that the vehicle swerved or took any evasive action. The vehicle simply failed to negotiate the curve." The district court found that Lee's testimony about driving off the road to avoid a deer was "not supported by any physical evidence of such a maneuver as the vehicle left the roadway."
 
 
 39
 Lee himself testified that he did not apply the brakes when he allegedly saw the deer. Lee's accident expert testified that he did not know of any physical evidence indicating Lee applied the brakes or took any other action on the shoulder. A witness who examined the scene testified that there were no speed marks or brake marks. Another witness testified that he did not observe any indication of brake marks or "any sort of evasive action that might have been taken by the vehicle."
 
 
 40
 Mr. Alcorn, a forensic engineer, testified that he did not have evidence to disprove that Lee attempted to go around a deer. In his opinion, there were two causes of the accident: 1) driver inattention, distraction, or impairment; and, 2) the vehicle's exceeding the critical speed of the curve which caused the vehicle to drift off to the right. Implicit in this statement is the fact that the speed caused Lee to drift to the right and not a deer. Additionally, Mr. Welch, an accident expert, testified that it would be a normal response to apply the brakes quickly and turn when one encounters a deer on the road. He then confirmed that there was no evidence of any braking. Given all of this evidence, the district court's finding cannot be classified as clearly erroneous.
 
 
 41
 Lee next challenges the district court's finding that he drove 500 miles or more on September 5, 1990 and September 6, 1990. At oral argument the United States admitted the district court erred in making this determination.
 
 
 42
 Any error, however, was immaterial as Lee was substantially exceeding the posted speed limit and substantially intoxicated at the time of the accident. Given these facts we cannot hold that the district court's determination that Lee's negligence exceeded the negligence of the United States was clearly erroneous.
 
 
 43
 AFFIRMED.
 
 
 
 *
 Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3